UNITED STATES DISTRICT COURT FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | )( | |
| | )( | **Criminal No. 07-288** |
| **v.** | )( | **Judge Friedman** |
| | )( | **Motions Hearing: March 26, 2008** |
| **EDWARD MADDOX** | )( | |

**MOTION TO SUPPRESS EVIDENCE, STATEMENTS, AND INFORMATION
AND POINTS AND AUTHORITY IN SUPPORT THEREOF**

COMES NOW the defendant, Edward Maddox, by and through undersigned

counsel, and respectfully moves this Honorable Court, pursuant to the Fourth

Amendment to the United States Constitution, to suppress the evidence, statements, and

information obtained at the time of his arrest.  In support of this motion, Mr. Maddox

would show:

1.    On September 28, 2007, a search warrant was issued for the premises at

5025 Sheriff Road, N.E.  In the affidavit that was submitted in support of the warrant

(Affidavit), the affiant claims that, on at least three separate occasions, he has witnessed

Mr. Maddox engage in numerous hand-to-hand transactions on the street wherein Mr.

Maddox would give a person a small object in exchange for money.  The occasions on

which the affiant observed Mr. Maddox engaging in these hand-to-hand transactions all

occurred in the early morning hours (before 8:00 a.m.), which is a time that the affiant

says is associated with heroin distribution (according to the affiant, heroin, unlike

cocaine, is a "morning" drug).  Moreover, the affiant says that the area where he observed

Mr. Maddox engaging in these hand-to-hand transactions (the 600 block Division

Avenue. N.E.) has been an "open-air market" for drug trafficking "for at least tens years, if not considerably longer." Affidavit at 1-2

2.      In addition to claiming to have first-hand knowledge of Mr. Maddox's of Mr. Maddox's apparently illegal activities, the affiant also claims that he has received additional information about Mr. Maddox's illegal activities from a confidential informant. In three consecutive sentences, the affiant describes what this confidential informant purportedly relayed to him about Mr. Maddox. In the first sentence, the affiant states that he has been briefed by a reliable confidential informant regarding Mr. Maddox's drug activities. In the second sentence, the affiant goes on to state that this informant "has direct personal knowledge of Mr. Maddox's activities." Finally, in the third sentence, the affiant states that the informant has, on several occasions, stated that Mr. Maddox "carries a black nine-millimeter semi-automatic handgun while he is selling drugs on Division Avenue, N.E." Affidavit at 2.

3.      Upon scrutiny, the affiant's representations about the informant's knowledge of Mr. Maddox's allegedly illegal activities is not nearly as damning as it first appears. First, regarding the "drug activities" of Mr. Maddox about which the informant has briefed the affiant, the affiant does not say what these "drug activities" actually are or what exactly the informant has said about them. Additionally, the affiant does not state what the informant's basis of knowledge is for whatever reports about these drug activities he is making. Second, regarding the "activities" of Mr. Maddox about which the informant does reportedly have direct personal knowledge, the affiant again does not indicate what these "activities" actually are. More importantly, he does not make clear if

2

these activities about which the informant has direct personal knowledge actually have anything to do with Mr. Maddox's alleged drug dealing and carrying of a firearm. Indeed, the affiant does not even make clear if these activities actually are illegal in nature. Finally, regarding the fact that Mr. Maddox carries a nine-millimeter semi-automatic handgun while selling drugs, the affiant only claims that the informant <u>states</u> that Mr. Maddox does this. The affiant does not say that the informant is actually claiming to have witnessed Mr. Maddox doing this. Moreover, the affiant does not disclose what basis of knowledge the informant has for stating that Mr. Maddox carries a nine-millimeter handgun while selling drugs.

4.      In the Affidavit, the affiant claims that he has consulted with other police officers and learned that, on June 6, 2007, a police sergeant conducted a traffic stop on Mr. Maddox. The registration for the car Mr. Maddox was driving was evidently examined, for the affiant claims that the registration showed that car was registered to Mr. Maddox and another person. The affiant states that, during the traffic stop, the police recovered $6,700 in suspected drug proceeds from inside the car. The affiant also states that a quantity of heroin was found on the ground near where the traffic stop occurred. The affiant does not disclose how the officers he consulted with came to acquire any of the information regarding the traffic stop that he relayed in the Affidavit. Affidavit at 2.

5.      In the Affidavit, the affiant attempts to demonstrate Mr. Maddox's connection with 5025 Sheriff Road, N.E. by stating that, on at least three separate occasions, he has observed the car in which Mr. Maddox was stopped on June 6, 2007 "parked at this address" in the very early morning hours when people would ordinarily be

3

asleep.  Interestingly, despite the fact that the affiant had admittedly been surveilling Mr.

Maddox and 5025 Sheriff Road, N.E. for approximately one month, the affiant does not

say that he has ever observed Mr. Maddox actually enter that premises.

6.      At an evidentiary hearing, Mr. Maddox can show that, in the complex

where 5025 Sheriff Road, N.E. is located, the townhouse apartments are all arranged so

that they front a courtyard-like commons.  The residents do not have a parking lot or any

parking spaces.  They must park their cars on the public streets in the neighborhood.

Thus, it would be impossible to actually see a car "parked at" 5025 Sheriff Road, N.E.,

like the affiant claims he saw.  While a car might be parked near 5025 Sheriff Road, N.E.,

there still would be no way of knowing what residence in the neighborhood the car was

actually associated with.

7.      At the preliminary hearing in this case, the affiant testified that he has

actually seen Mr. Maddox enter another townhouse apartment in the same complex as

5025 Sheriff Road, N.E.  As it turns out, at the time that the warrant was being sought,

Mr. Maddox had relative who was living in one of the other townhouse apartments in that

same complex.  Mr. Maddox was staying with this relative from time-to-time.  In the

Affidavit, the affiant never mentions that he has actually seen Mr. Maddox entering

another townhouse apartment in the complex.

8.      The registration for Mr. Maddox's car lists his address as 1610 Hayshire

Court in Gaithersburg.  As already stated, in the Affidavit, the affiant indicates that the

police examined Mr. Maddox's registration during the traffic stop that occurred on June

6, 2007, supra at 3.  Thus, at the time that the affiant applied for the warrant, he would

have known that Mr. Maddox had a different address than 5025 Sheriff Road, N.E. However, he neglected to mention that Mr. Maddox had this different address in the Affidavit.

9.      Because the affiant never indicates that he has actually seen Mr. Maddox entering another apartment in the complex, because the affiant does not disclose that Mr. Maddox actually has an address in Gaithersburg, and because the affiant states that he has seen Mr. Maddox's car "parked at" 5025 Sheriff Road, N.E. (when in fact the most he could say is that he has seen Mr. Maddox's car parked near the complex generally), the affiant either recklessly or even deliberately gives the false impression that Mr. Maddox had a much stronger connection with 5025 Sheriff Road, N.E. than was seemingly the case.

10.     In the affidavit, the affiant states that, "through other police investigative techniques," he has "acquired other information indicating that Maddox regularly uses the town-house at 5025 Sheriff Road, N.E. as a base of operations [for his drug-dealing activities]." The affiant does not indicate what these "other police investigative techniques" actually were, and he does not disclose what "information" the techniques supposedly yielded. Moreover, he does not disclose what basis of knowledge underlay the information. Affidavit at 2.

11.     Apparently to further bolster his claim that Mr. Maddox has some association with 5025 Sheriff Road, N.E., the affiant states in the Affidavit that he has determined that a relative of Mr. Maddox lives at that address. However, the affiant again does not disclose how he came to make this determination. Affidavit at 2.

12.     In the affidavit, the affiant bolsters his case that there is probable cause to believe that Mr. Maddox is carrying a firearm by citing a conviction of Mr. Maddox on a federal firearm charge stemming from an arrest in 1996.  Affidavit at 2-3.

13.     Even a cursory review of the court records shows that Mr. Maddox's firearm conviction stemming from the 1996 arrest was overturned on appeal.  Moreover, such a review also shows that Mr. Maddox was subsequently acquitted at a re-trail.  In the Affidavit, the affiant fails to mention the fact that Mr. Maddox's conviction was overturned and that he was acquitted at the re-trial—even though such information, if not actually known, would have been easily determined with a proper exercise of diligence.

14.     When the assertions in the Affidavit for which no identified basis of knowledge has been disclosed are excised along with those assertions that are patently false, the remaining assertions do not make out probable cause for a search of 5025 Sheriff Road, N.E.  The remaining assertions do not show that Mr. Maddox's alleged illegal activities are of a scale and type that would make it likely that evidence of those activities would be found in any place where he was staying.  Moreover, the remaining assertions do not even provide legitimate grounds for believing that Mr. Maddox has any connection with 5025 Sheriff Road, N.E. to begin with.  For this reason, the Affidavit does not properly make out probable cause for a search warrant of the premises.

15.     In finding probable cause to issue a search warrant for 5025 Sheriff Road, N.E., the judge who issued the warrant had to either 1) blindly defer to and "rubber stamp" the conclusory assertions of the affiant or 2) rely upon assertions of the affiant

that were recklessly or even deliberately false. Accordingly, the government cannot avail itself of the <u>Leon</u> "good faith" exception to prevent application of the exclusionary rule to the evidence recovered pursuant to the search warrant.

16.     In morning hours of September 29, 2007, the police arrived at 5025 Sheriff Road, N.E. to execute the search warrant for the premises that the affiant obtained with the Affidavit. When they arrived at the location, the police did not execute the warrant immediately. Rather, they waited until they saw Mr. Maddox arrive at the scene and park his car on a nearby public street. After Mr. Maddox exited his car, the police seized him and a set of keys from him. The police did not have a warrant for Mr. Maddox's arrest, nor had they had observed Mr. Maddox engaging in any suspicious activities before they seized him. It appears that the only reason the police did seize Mr. Maddox is because of the search warrant they were getting ready to execute.

17.     When the police took the keys from Mr. Maddox, they used those keys to enter and search his car, purportedly recovering a small quantity of heroin that was concealed under a floor-mat in the passenger compartment and a pistol that was in the trunk. The police did not have a warrant to search Mr. Maddox's car. Nothing in the materials provided to Mr. Maddox through discovery and nothing in the testimony that was presented at the preliminary hearing indicates that the police had any grounds for searching Mr. Maddox's car. The Assistant United States Attorney who was originally prosecuting this case told undersigned counsel that he believed that, before the car was searched, the police walked trained police dogs around the car. The Assistant stated that it was his understanding that these dogs made certain "alerts" that indicated they smelled

drugs inside the car.  This is the only explanation for the search of the car that has ever been given.

18.    Mr. Maddox asserts that, even if dogs were brought in to sniff around his car, the police entered and searched the car before the dogs ever made any alerts. Moreover, he asserts that whatever alerts the dogs did make were not sufficiently reliable to support probable cause that the car contained drugs.

19.    When the police searched the car that Mr. Maddox was driving, they did not have a search warrant for the car or proper grounds for dispensing with the warrant requirement.  Also, they did not have probable cause that the car contained contraband or evidence, and they did not have a reasonable suspicion that it contained weapons that would have been readily available to Mr. Maddox.  Further, the search of the car cannot be justified on the grounds that police dogs gave alerts indicating that they smelled drugs in the car.  Accordingly, the search of the car was illegal, and all evidence that was recovered from car must be suppressed.

20.    At some point after the police seized Mr. Maddox, they forcibly took him to the residence at 5025 Sheriff Road, N.E.  Using the keys that they had earlier obtained from him, the police entered the residence and began executing the search warrant.  In searching the residence, the police allege that they recovered various quantities of drugs, paraphernalia for the distribution of drugs, U.S. currency, and documents which belonged to Mr. Maddox.  Some of these documents listed Mr. Maddox's address as 5025 Sheriff Road, N.E.  Moreover, the police claim that they found personal belongings of Mr. Maddox's in one of the bedrooms.  The police further claim that while they were

executing the search warrant, Mr. Maddox stated that all of the drugs in the house belonged to him.

21.     When the police seized Mr. Maddox after he exited his car, they did not have an arrest warrant or proper grounds for dispensing with the warrant requirement. Also, they did not have probable cause or even a reasonable suspicion that he was involved in criminal activity.  Further, the existence of the search warrant is insufficient to justify the seizure of Mr. Maddox that occurred here.  Accordingly, the seizure was illegal, and all evidence that was recovered from Mr. Maddox's person and all statements made by Mr. Maddox after he was seized must be suppressed.


**THE SEARCH WARRANT**

In order to issue a search warrant, a judicial officer must find that, "given all the circumstances set forth in the affidavit before him, …there is a fair probability that contraband or evidence of a crime will be found in [the] place [for which the search warrant is being sought]."  United States v. Warren, 42 F.3d 647, 652 (D.C. Cir. 1995) (quoting Illinois v. Gates, 462 U.S. 213, 238 (1983)).   Before going into an analysis of the circumstances set forth in the Affidavit to see if the Affidavit does in fact make out probable cause for the search of 5025 Sheriff Road, N.E., it is important to point out that many of the assertions made in Affidavit must be excluded from consideration because they are ultimately non-informative and because they do not make clear what the bases of knowledge underlying them are.  A conclusory assertion for which no basis of knowledge is indicated does not permit a neutral magistrate to make an independent determination of

probable cause and cannot therefore be used to justify any finding of probable cause.

Whiteley v. Warden, 401 U.S. 560, 564-65 (1971).  Here, the Affidavit does not disclose

the bases of knowledge for any of the assertions that the affiant makes 1) regarding what

the informant told him regarding Mr. Maddox's drug-dealing activities and his carrying

of a firearm,[1] 2) regarding what the police officers told him regarding the traffic stop of

Mr. Maddox on June 6, 2007,[2] 3) regarding having information that Mr. Maddox uses

5025 Sheriff Road, N.E as a base of operations for his drug-dealing activities,[3] and 4)

regarding having determined that a relative of Mr. Maddox resides at 5025 Sheriff Road,

N.E.[4]   Accordingly, none of these assertions can be used to support a finding of probable

cause for the search warrant at issue here.

Once the assertions which are ultimately non-informative and for which no basis

of knowledge has been disclosed are removed from consideration, the Affidavit is

---

[1] The affiant only states that the informant briefed him about Mr. Maddox's drug activities.  The affiant never actually says what information was actually disclosed to him or what the basis of knowledge underlying the information was. The affiant also says that the informant, on several occasions, stated that Mr. Maddox carries a nine-millimeter semi-automatic handgun while selling drugs.  However, the affiant again fails to disclose what basis of knowledge the informant had for making these statements.  While the affiant does, at one point, say that the informant "has direct personal knowledge of Mr. Maddox's activities," the affiant again never specifies what these activities of Mr.  Maddox about which the informant has direct personal knowledge are.  It is perhaps possible that these activities are related to Mr. Maddox's alleged drug dealing and carrying of a weapon, but is also equally possible that these activities are entirely innocent in nature.

[2] The affiant claims that he has been informed by police officers that, on June 6, 2007, Mr. Maddox was subjected to a traffic stop in which suspected drug proceeds were recovered from the car and a quantity of heroin was recovered near the car.  The affiant, however, does not reveal how the police officers who reported this information to him came to be possessed of it.

[3] The affiant only states that, "through other police investigative techniques," he has "acquired other information indicating that Maddox regularly uses the town-house at 5025 Sheriff Road, N.E. as a base of operations [for his drug-dealing activities]."  The affiant does not indicate what these "other police investigative techniques" actually were, and he does not disclose what "information" the techniques supposedly yielded.  Moreover, he does not disclose what basis of knowledge underlay the information.

[4] The affiant only says that he has determined that a relative of Mr. Maddox lives at 5025 Sheriff Road, N.E.  The affiant does not disclose how he came to make this determination.

remarkably bare.  Regarding Mr. Maddox's alleged illegal activities, the only assertion that remains is the one in which the affiant claims that, on at least three occasions, he has personally witnessed Mr. Maddox engage in numerous encounters with persons wherein Mr. Maddox tendered a small object in exchanged for money.  Regarding Mr. Maddox's connection with 5025 Sheriff Road, N.E., the only assertion that remains is the one in which the affiant claims that, again on at least three occasions, he has observed Mr. Maddox's car "parked at" 5025 Sheriff Road, N.E.  These assertions are insufficient for a finding of probable cause to search 5025 Sheriff Road, N.E.

To begin with, even if it is admitted for the sake of argument that there was probable cause to believe that Mr. Maddox may have been dealing drugs based on the affiant's assertion that he had witnessed Mr. Maddox engaging in hand-to-hand transactions of small objects for money, this would still not support a finding that Mr. Gant was involved in drug dealing on such a scale or in such a way that it would make it likely that evidence related to his drug dealing would be found at whatever residence he might be staying.  Even where a person's home address is definitively known, probable cause to believe that that person has committed a crime is not by itself adequate to secure a search warrant for his home.  Zurcher v. Stanford Daily, 436 U.S. 547, 556 (1978).  Here, even if it was to be admitted that 5025 Sheriff Road, N.E. was in fact where Mr. Maddox was living, there is nothing to adequately connect his alleged drug-dealing activities to the premises.  Accordingly, no probable cause for the search warrant for 5025 Sheriff Road, N.E. can be shown.  See United States v. Ramos, 923 F.2d 1346, 1351-52 (9th Cir. 1991) (even where van which was seemingly used for drug-distribution

activities by person for whom probable cause existed was seen parked at person's apartment, there still was no probable cause for search of apartment because there was no evidence of anything ever having been unloaded from the van into the apartment).

While the Affidavit fails to properly make out that Mr. Maddox's alleged drug-dealing activities were of such a type as to make it likely that evidence related to those activities would be found at whatever residence he was staying, an even bigger problem here is that there is simply no legitimate grounds for concluding that Mr. Maddox had any connection at all to 5025 Sheriff Road, N.E. in the first place. Though the affiant says that he has seen Mr. Maddox's car "parked at the address," this is in fact impossible. At an evidentiary hearing, Mr. Maddox can show that residents at the townhouse complex in which 5025 Sheriff Road, N.E. is located do not have parking spaces. Instead, they park their cars on the public streets in the neighborhood. Thus, even if the affiant had observed Mr. Maddox's car, the most he could have possibly said is that the car was parked in the neighborhood in the vicinity of 5025 Sheriff Road, N.E. However, he could no more say that the car was "parked at" 5025 Sheriff Road, N.E. than he could say that it was "parked at" any of the other residences in the area. Thus, he knew or should have known that his assertion that the car was "parked at" 5025 Sheriff was a false and misleading statement. If the judge who issued the warrant had not been misled, he would have had no valid grounds for even thinking that Mr. Maddox had a connection with 5025 Sheriff Road, N.E. in the first place. Where probable cause is based on an assertion that the affiant knew or should have known was false, no probable cause can be found to exist. Franks v. Delaware, 438 U.S. 154 (1978)

Undoubtedly, the government will now argue that, even though there was no probable cause for the search of 5025 Sheriff Road, N.E., the police nevertheless relied on the search warrant in good faith and that, under <u>Leon v. United States</u>, 468 U.S. 897 (1984), the exclusionary rule should therefore still not be applied. This argument, however, is not applicable to this case. Here, in the Affidavit, the affiant only makes three assertions that link Mr. Maddox to 5025 Sheriff Road, N.E. First, the affiant asserts that, "through other police investigative techniques," he has "acquired other information indicating that Maddox regularly uses the town-house at 5025 Sheriff Road, N.E. as a base of operations [for his drug-dealing activities]." Second, the affiant asserts that he has determined that a relative of Mr. Maddox resides at 5025 Sheriff Road, N.E. Third, the affiant asserts that, on at least three occasions, he has seen Mr. Maddox's car "parked at" 5025 Sheriff Road, N.E. Since these three assertions are the only assertions in the Affidavit showing any connection between Mr. Maddox and 5025 Sheriff Road, N.E., the judge had to rely on at least one of these assertions to find probable cause for the search of the premises. The problem is that, to the extent the judge relied on any of these assertions in finding probable cause for the search, the <u>Leon</u> "good faith" exception does not have any application.

Police officers' good faith reliance on a search warrant does not rescue the government from application of the exclusionary rule where the magistrate who signed the warrant "did not perform his 'neutral and detached' function and…serve[d] merely as a rubber stamp for the police." <u>Leon</u>, 468 U.S. at 914 (<u>quoting</u> <u>Aguilar v. Texas</u>, 378 U.S. 108, 111 (1971)). "A magistrate failing to 'manifest that neutrality and detachment

demanded of a judicial officer when presented with a warrant application' and who acts instead as 'an adjunct law enforcement officer' cannot provide valid authorization for an otherwise unconstitutional search." Leon, 468 U.S. at 914 (quoting Lo-Ji Sales, Inc. v. New York, 442 U.S. 319 326-27 (1979)). For the Leon "good faith" exception to apply, the magistrate's "action cannot be a mere ratification of the bare conclusions of others." Leon, 468 U.S. at 915 (quoting, Aguilar, 378 U.S. at 114-15).

In the instant matter, in the Affidavit, the affiant claims that, "through other police investigative techniques," he has "acquired other information indicating that Maddox regularly uses the town-house at 5025 Sheriff Road, N.E. as a base of operations [for his drug-dealing activities]." The affiant does not indicate what these "other police investigative techniques" actually were, and he does not disclose what "information" the techniques supposedly yielded. Moreover, he does not disclose what basis of knowledge underlay the information. Accordingly, the judge who issued the search warrant could not have found probable cause based on the affiant's asserted determination that Mr. Maddox uses 5025 Sheriff Road, N.E. as a base of operations for his drug-dealing activities without doing anything but blindly deferring to the affiant's determination entirely. This is precisely the kind "rubber stamping" and "mere ratification of the bare conclusions of others" that Leon expressly says preclude the government from making use of the "good faith" exception to the exclusionary rule. Moreover, in the Affidavit, the affiant asserts that he has determined that a relative of Mr. Maddox resides at 5025 Sheriff Road, N.E., but again he does not disclose how he came to make such a determination. Thus, once again, to the extent the judge relied on this assertion to find

14

probable cause for the search warrant, he merely deferred to the judgment of the affiant entirely. For these reasons, to the extent the judge who issued the warrant based his determination of probable cause for the search on the affiant's assertion that Mr. Maddox uses 5025 Sheriff Road, N.E. as base of operations for his drug-dealing activities and his assertion that a relative of Mr. Maddox resides at the address, the government cannot make use of the <u>Leon</u> "good faith" to prevent the exclusionary rule from being applied to the evidence that was seized pursuant to the warrant.

Once the affiant's assertion that Mr. Maddox uses 5025 Sheriff Road, N.E. as base of operations for his drug-dealing activities and his assertion that a relative of Mr. Maddox resides at the address are excluded from the calculus, the only other assertion in the Affidavit linking Mr. Maddox to the address is the affiant's assertion that he has seen Mr. Maddox's car "parked at" the address on at least three occasions. However, to the extent the judge based his determination of probable cause on this assertion, the police officers still cannot claim that they relied on the judge's determination in good faith so as to prevent application of the exclusionary rule. <u>Leon</u> makes clear that the "good faith" exception is not be applied where the judge's determination of probable cause was based on a "knowing or reckless falsity" in the information that the police themselves provided. <u>Leon</u>, 468 U.S. at 914 (<u>citing</u> <u>Franks v. Delaware</u>, 438 U.S. 154 (1978)). Here, the affiant's assertion that he has seen Mr. Maddox's car "parked at" 5025 Sheriff Road, N.E. cannot possibly be true because none of the townhouse apartments in the complex have parking spaces. Residents must park their cars on public streets in the neighborhood. Thus, even if is assumed that the affiant did see Mr. Maddox's car on some occasions, the

most that he could have seen is that the car was parked in the neighborhood in which

5025 Sheriff road, N.E. is located.  This of course would no more link Mr. Maddox to

5025 Sheriff Road, N.E. than it would to any of the other residences in the area.

For showing a person's association to a residence, the difference between saying

that the person's car is "parked at" the residence and saying that his car is parked in the

neighborhood in which the residence is located is so enormous that it would have to be

apparent to anyone of normal intelligence.  An assertion that the car was "parked at" the

residence when, in fact, it was only parked in the neighborhood in which the residence is

located is so clearly misleading that it must at the least be viewed as a reckless if not

deliberate falsity.  In determining whether the affiant communicated at least a reckless

falsity when he claimed that he had seen Mr. Maddox's car "parked at" 5025 Sheriff

Road, N.E., the Court should also consider that the affiant failed to disclose in the

Affidavit that, on one occasion, he had actually observed Mr. Maddox go into another

nearby residence and that he also failed to disclose that the registration for Mr. Maddox's

car showed that Mr. Maddox had an address in Gaithersburg.

Because the judge who issued the warrant at issue here could not have found

probable cause for the search without either relying on assertions in the Affidavit which

had no identified bases of knowledge and assertions which the affiant knew or should

have known were false, the search warrant was without probable cause.  Moreover,

because the judge had to have found probable cause for the search by either 1) blindly

deferring to and "rubber stamping" the conclusory assertions of the affiant or 2) relying

upon assertions of the affiant that were recklessly or even deliberately false, the

government cannot avail itself of the <u>Leon</u> "good faith" exception to prevent application of the exclusionary rule.  Accordingly, the evidence recovered pursuant to the search warrant must be suppressed.

## SEIZURE OF MR. MADDOX'S PERSON

When the police officers seized Mr. Maddox after he exited his car, the officers seized him within the meaning of the Fourth Amendment.  A Fourth Amendment seizure has occurred when, "in view of all the circumstances surrounding the incident, a reasonable person would have believed he was not free to leave." <u>United States v. Mendenhall</u>, 446 U.S. 554 (1980).  Here, Mr. Maddox was seized within the meaning of the Fourth Amendment because he was approached by marked police cars and several armed policemen, was given verbal commands to yield to the police show of authority and force (which he submitted to), was physically restrained and handcuffed, and was forcibly moved by the police from where he was on a public street to the residence where the search warrant was to be executed.

Seizures conducted without a warrant are <u>per se</u> unreasonable, subject only to a few well-defined exceptions. <u>Katz v. United States</u>, 389 U.S. 347 (1967); <u>Coolidge v. New Hampshire</u>, 403 U.S. 443 (1971).  In order to seize someone without a warrant, a police officer must typically have probable cause to believe that a crime has occurred and that the defendant committed it. <u>Brinegar v. United States</u>, 338 U.S. 160, 175-176 (1949).  However, even without probable cause, a police officer may sometimes, as an investigatory matter, briefly detain and question a subject if the officer has "reasonable grounds to believe [that] . . . criminal activity is afoot." <u>Terry v. Ohio</u>, 392 U.S. 1, 30 (1968).  To warrant a detention under <u>Terry</u>, "there must be something at least in the

activities of the person being observed or in his surroundings that affirmatively suggests criminal activity, completed, current, or intended". Sibron v. New York, 392 U.S. 40, 73 (1968). "Concrete facts"—not inarticulable suspicions—must form the foundation of a Terry stop. United States v. Cortez, 449 U.S. 411, 417 (1981). In addition to having either probable case or, in some circumstances, reasonable suspicion, the police must also have some exigent circumstance for the seizure that necessitates foregoing the warrant requirement. Coolidge, 403 U.S. at 454-55. The burden of proof is on the government to show that a warrantless search or seizure is constitutional. Vale v. Louisiana, 399 U.S. 30 (1969).

        As an initial matter, the seizure of Mr. Maddox cannot be properly characterized as a Terry stop. Terry does not permit anything more than a protective weapons frisk, and even in order for such a frisk to be justified, the police must have, in addition to the reasonable articulable suspicion for the initial stop itself, further reasonable articulable suspicion that the suspect is presently armed and dangerous. United States v. Flippin, 924 F.2d 163, 164-66 & n.2 (9th Cir. 1991). Here, the police did not have any reasonable articulable suspicion that Mr. Maddox was presently armed and dangerous, and even if they did have such suspicion, they subjected Mr. Maddox to more than just a weapons frisk. Thus, the seizure of Mr. Maddox was a full-blown warrantless arrest requiring a showing of legitimate necessity for foregoing the warrant requirement and probable cause. Here, however, the police did have not such legitimate necessity. Moreover, they did not have probable cause. Indeed, at the time they seized Mr. Maddox, the police here did not have sufficient grounds to detain him even under the lower reasonable-suspicion standard announced in Terry.

        When the police seized Mr. Maddox, they apparently did so for no other reason than that they were executing the warrant at 5025 Sheriff Road, N.E. While Terry

permits the police to seize occupants of the premises during the execution of a search
warrant, <u>Michigan v. Summers</u>, 452 U.S. 692, 704-05 (1981), it does not permit the
police to seize persons who are not on the premises at the time that the warrant is being
executed.  <u>United States v. Reinholz</u>, 245 F.3d 765 (8th Cir. 2001); <u>United States v.
Edwards</u>, 103 F.3d 90, 93-94 (10th Cir. 1996); <u>United Sates v. Sherrill</u>, 27 F.3d 344, 346
(8th Cir. 1994); <u>Whitaker v. Commonwealth</u>, 553 S.E.2d 539, 544-45 (Va. App. 2001).
Moreover, it cannot be claimed that the any factors that might justify a <u>Terry</u> stop of a
person during the execution of the warrant (such as preventing flight should incriminating
evidence be found or minimizing the risk to the officers' safety) provided a legitimate
justification for the seizure of Mr. Maddox that occurred here.  <u>See</u> <u>Summers</u>, 452 U.S. at
702-03. Accordingly, because the police officers did not have a legal right to seize Mr.
Maddox, all evidence and statements obtained as fruits of his seizure must be suppressed.
<u>Taylor v. Alabama</u>, 457 U.S. 687, (1982); <u>Dunaway v. New York</u>, 442 U.S. 590 (1975);
<u>Brown v. Illinois</u>, 422 U.S. 590 (1975); <u>Wong Sun v. United States</u>, 371 U.S. 471 (1973).


## <u>SEARCH OF THE CAR</u>

The search warrant that the police executed at 5025 Sheriff Road, N.E. only
authorized the police to search the premises; it did not authorize them to search any cars.
It is true that courts have ruled that a search warrant for a premises extends to vehicles
that are actually on the premises or in the curtilage of the premises.  <u>See, e.g.</u>, <u>United
States v. Gottschalk</u>, 915 F.2d 1459, 1461 (10th Cir. 1990) (search warrant covered
inoperable car that was located in the driveway and being used for storage).  Here,
however, the car that Mr. Maddox had been driving was actually parked on a public street

in the neighborhood in which the premises was located.  It cannot, therefore, be claimed that the search warrant gave the police any right to search the car.  <u>Mack v. City of Abilene</u>, 461 F.3d 547, 553-55 (5th Cir. 2006) (search warrant for apartment did not cover car in apartment complex parking lot); <u>United States v. Stanley</u>, 597 F.2d 866, 870 (4th Cir. 1979) (search warrant for mobile home did not cover car in common area parking lot).

Since the warrant itself did not give the police grounds for searching the car, the government must obviously demonstrate that there was a necessity for dispending with the warrant requirement and that there was also probable cause, or at least a reasonable suspicion, for the search.  However, nothing in the documents that have been provided to Mr. Maddox through discovery or in the testimony that was adduced at the preliminary hearing indicates that there were any exigencies present that would legitimately permit foregoing of the warrant requirement or that would even give the police grounds for believing that the car contained evidence or weapons.  While the government now appears to be arguing that the police at least had probable cause for the search because, prior to the search, police dogs were walked around the car and made alerts so as to indicate that drugs were inside, the truth is that, if such dogs were in fact present at the scene, the car was entered and searched before the dogs ever gave any kind of alerts for the presence of drugs.  Moreover, before the government can rely on an alert by a narcotics dog for establishing probable cause, it must show that the dog upon whose alert it is relying is in fact reliable.  <u>See, e.g.</u>, <u>United States v. Berry</u>, 90 F.3d 148 (6th Cir 1996); <u>United States v. Florez</u>, 871 F.Supp. 1411 (D.N.M. 1994); <u>State v. England</u>, 19

S.W.3d 762 (Tenn. 2000). The government has cannot make any such showing here. Accordingly, for these reasons the search of the car was illegal, and all evidence recovered from the car must be suppressed.

## <u>CONCLUSION</u>

First, because the search warrant for 5025 Sheriff Road, N.E. was not based upon a proper showing of probable cause and because it cannot be legitimately claimed that the <u>Leon</u> "good faith" exception prevents application of the exclusionary rule, the search of the premises was illegal, and all evidence recovered in the search must be suppressed. Second, because there was neither a warrant for Mr. Maddox's arrest nor any legitimately present exigencies that would justify foregoing the warrant requirement accompanied by probable cause or even a reasonable suspicion towards Mr. Maddox, the seizure of Mr. Maddox was illegal, and the evidence recovered from his person and the statements he made must be suppressed. Finally, because there was neither a warrant for the search of Mr. Maddox's car nor any legitimately present exigencies that would justify foregoing the warrant requirement accompanied by probable cause or even a reasonable suspicion towards the car, the search of the car was illegal, and the evidence recovered from his person and the statements he made must be suppressed.

WHEREFORE, the defendant, Edward Maddox, respectfully moves this Honorable Court, to suppress the evidence, statements, and information obtained at the time of his arrest.

Respectfully submitted,


_____/s/_____
Jerry Ray Smith
Counsel for Edward Maddox
717 D Street, N.W.
Suite 400
Washington, D.C. 20004

**UNITED STATES DISTRICT COURT FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | )( | |
| | )( | **Criminal No. 07-288** |
| **v.** | )( | **Judge Friedman** |
| | )( | **Motions Hearing: March 26, 2008** |
| **EDWARD MADDOX** | )( | |

## <u>ORDER</u>

**UPON CONSIDERATION** of the defendant's Motion to Suppress Evidence,

Statements, and Information and Points and Authority in Support thereof, the government's

Opposition, and the defendant's Reply, it is this _____ day of _____, 2008

hereby

**ORDERED** that the motion is granted, and it is further

**ORDERED** that all evidence, statements, and information obtained at the time of Mr.

Maddox's arrest are hereby suppressed.

**SO ORDERED.**

_____
Paul L. Friedman
United States District Judge