UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | |
| | : | |
| v. | : | Cr. No. 07-288 (PLF) |
| | : | |
| EDWARD MADDOX, | : | |
| Defendant. | : | |

GOVERNMENT'S OPPOSITION TO DEFENDANT'S MOTION TO
SUPPRESS EVIDENCE, STATEMENTS AND OTHER INFORMATION

The United States, by and through its attorney, the United States Attorney for the District of Columbia, respectfully submits this opposition to defendant Edward Maddox's initial motion and supplemental motion to suppress evidence, statements, and other information. In support of its motion, the United States relies on the following points and authorities and such other points and authorities as may be cited at a hearing regarding the defendant's motions:

Defendant's Current Charges

In this case, defendant is charged with the following four counts: 1) Unlawful Possession with Intent to Distribute Heroin, 2) Unlawful Possession with Intent to Distribute Cannabis, 3) Using, Carrying and Possessing a Firearm During a Drug Trafficking Offense, and 4) Unlawful Possession of a Firearm and Ammunition by a Person Convicted of a Crime Punishable by Imprisonment for a Term Exceeding One Year.

Procedural Background

I.  Basis For The Search Warrant

Metropolitan Police Department Detective Kevin Copeland, who has been a law enforcement officer for 19 years and has been actively involved in narcotics and gun-related investigations as a detective currently assigned to the Narcotics Special Investigation Division, requested the issuance

of a search warrant for the premises of 5025 Sheriff Road, N.E. Detective Copeland requested this warrant, as set forth in a supporting affidavit, based on his investigation of the defendant, which led him to believe that the defendant: 1) was engaged in the sale of narcotics, while armed with a gun, in the 600 block of Division Avenue, N.E., and 2) was storing items related to this illegal activity at the premises of 5025 Sheriff Road, N.E., where he was living at that time.

As part of his investigation, Detective Copeland gathered information about the defendant through a variety of means, including: 1) his discussions with a confidential informant who had direct personal knowledge of the defendant's sale of narcotics while armed with a gun; 2) Detective Copeland's personal surveillance of the 600 block of Division Avenue, N.E. and 5025 Sheriff Road, N.E.; 3) Detective Copeland's discussions with other law enforcement officers regarding their knowledge of the defendant's suspected illegal activities; and 4) Detective's Copeland's review of documents related to his criminal history.

The referenced confidential informant had previously provided a substantial amount of useful information to law enforcement. This information proved reliable and was corroborated by independent investigation as being accurate, whenever possible. At the time Detective Copeland applied for the warrant, the confidential informant had provided him with accurate, reliable, and timely information, which resulted in the issuance of another search warrant and the seizure of two handguns, a very substantial amount of heroin, plus $174,000. While cooperating with Detective Copeland, this confidential informant did not provide information that Detective Copeland found to be incorrect or false.

On September 28, 2007, Senior Judge Robert S. Tignor of the Superior Court of the District of Columbia signed the warrant presented by Detective Copeland for the search of 5025 Sheriff Road, N.E.

II.     Execution Of The Search Warrant

On September 29, 2007, at approximately 7:15 a.m., MPD officers observed the defendant parking his car on 50th Street, N.E., at the intersection of Sheriff Road, N.E. MPD officers then approached the defendant and stopped him as he exited his vehicle. In plain view inside the car, MPD officers saw a small, empty plastic bag, which was consistent with the type of bag used to package illegal narcotics for sale on the street. MPD officers also requested and received the assistance of a well-trained and reliable police dog to sniff the outside of the defendant's car to further determine whether the car contained contraband. This dog alerted to the presence of contraband inside the car. Following this alert, the inside of the car was searched, and officers recovered various items, including: 1) eight black ziplock bags of a white powder substance, which field-tested positive for opiates, on the floorboard of the passenger compartment of the car, 2) a Smith & Wesson 40 caliber pistol, loaded with one round of ammunition in the chamber and 7 rounds in the magazine, in the trunk of the car, and 3) mail matter and identification cards in the name of the defendant.

After the defendant was stopped outside his car, he was taken to and secured inside the two-bedroom townhouse at 5025 Sheriff Road, N.E., as officers proceeded to search that location in accordance with the executed warrant. Inside the location, officers recovered various items, including: 1) in one of the two bedrooms (to be referred to as bedroom #1), seven green ziplock bags containing a white powder substance, and this substance field-tested positive for heroin, 2) also in

bedroom #1, $2,346.00 in U.S. Currency and tally sheets, 3) in one of two hall closets (to be referred to as closet #1), drug paraphernalia and one plastic bag containing a brownish powder substance weighing approximately 123 grams, and this substance field-tested positive for opiates, 4) in another hall closet (to be referred to as closet #2), two scales and several clear plastic bags containing a white powder substance weighing approximately 150 grams, and this substance field-tested positive for opiates, 5) also in hall closet #2, a sandwich bag containing a green weed substance weighing approximately 16 grams , and this substance field-test positive for the presence of THC; 6) in a closet in bedroom #2, a surgical mask and scale and 7) documents and mail matter in the name of the defendant.

Following the defendant's arrest, the officers recovered from the defendant: 1) $500 in U.S. currency from his left pants pocket and 2) two cellular phones from his right front pants pocket.  In addition, the defendant spontaneously told officers on the scene that the items recovered from the house belonged to him and that none of those items belonged to his nephew, who was also in the townhouse at the time of the search.

## ARGUMENT

I.  Defendant's Motion to Suppress Evidence, Statements, And Other Information Should Be Denied Because the Affidavit Provided a Substantial Basis for Probable Cause to Search Defendant's Apartment

A judicial officer's task in reviewing a search-warrant affidavit for probable cause "is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the 'veracity' and 'basis of knowledge' of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place." Illinois v. Gates, 462 U. S. 213, 238 (1983).  See also United States v. Thomas,

989 F.2d 1252, 1254 (D.C. Cir. 1993) (citing Gates). This Court accords great deference to the judicial officer's determination of probable cause. See United States v. Johnson, 437 F.3d 69, 71 (D.C. Cir 2006); United States v. Webb, 255 F.3d 890, 904 (D.C. Cir. 2001). A reviewing court examines only "whether there is substantial evidence in the record supporting the magistrate's decision to issue the warrant." Massachusetts v. Upton, 466 U.S. 727, 728 (1984); United States v. Thomas, 989 F.2d 1252, 1254 (D.C. Cir 1993). Thus, "although in a particular case it may not be easy to determine when an affidavit demonstrates the existence of probable cause, the resolution of doubtful or marginal cases in this area should be largely determined by the preference to be accorded to warrants." United States v. Ventresca, 380 U.S. 102, 109 (1965). Indeed, "[e]ven if a reviewing court would not have found probable cause in a particular case, it must nevertheless uphold a warrant so long as the issuing magistrate's determination was made consistent with the minimal substantial basis standard." United States v. Conley, 4 F.3d 1200, 1205 (3d Cir. 1993).

    A.    There Was a Substantial Basis for a Finding of Probable Cause By a Neutral and Detached Judge

The affidavit in support of the search warrant must be read in its entirety and in a common-sense and nontechnical manner. Gates, 462 U.S. at 230-31. Evaluated in that light, or indeed without any particular deference, the affidavit here contained ample facts to support Judge Tignor's finding of probable cause to believe that evidence of wrongdoing would be found at the target premises. The information presented in Detective Copeland's affidavit, showed both that 1) the defendant was actively involved in trafficking drugs while armed with a gun and 2) he was closely tied to the searched location.

        1.    The Affidavit Demonstrates that the Defendant Was Actively Involved In Trafficking Drugs While Armed With a Gun

          a.       Detective Copeland Personal Observations of the Defendant's
                    <u>Apparent Drug Selling Activities</u>

Detective Copeland suspected that the defendant sold heroin in the 600 block of Division Avenue, N.E., and, as a result, personally conducted surveillance of the defendant at that location on at least three different locations. (SW at 1).[1] On each occasion, Detective Copeland saw a number of people approach the defendant, give him money, and receive objects in return. <u>Id.</u> These transactions occurred outside on the street and early in the morning before 8:00 a.m. <u>Id.</u> Based on Detective Copeland's training and experience, he explains that the 600 block of Division Avenue, N.E., has been an open-air market for illegal narcotics trafficking for many years and that heroin sellers normally do much of their business in the early morning hours because heroin is essentially a "morning" drug. <u>Id.</u> Furthermore, Detective Copeland states that the defendant did not have items apparently for sale that would suggest that he was a vendor of legal goods. <u>Id.</u>

          b.       Confidential Informant's Personal Observations of the Defendant's
                    <u>Drug Selling Activities While Armed With A Gun</u>

A reliable confidential informant also provided first-hand and specific information to Detective Copeland regarding the defendant selling drugs while armed with a gun. (SW at 2). Based on the informant's "direct personal knowledge," the informant provided information that the defendant carries a black nine-millimeter semi-automatic handgun while selling drugs on Division Avenue, N.E. <u>Id.</u> The informant repeatedly told Detective Copeland that he was aware of the defendant carrying the gun on multiple occasions, including on the morning in which Detective Copeland applied for the search warrant. <u>Id.</u> Importantly, personal knowledge of an informant has

---

[1] SW at ___ refers to the referenced page(s) of the Affidavit in Support of an Application for a Search Warrant.

been found an "inherently reliable method" of obtaining information to support probable cause. Davis v. United States, 617 F.2d 677, 693 (D.C. Cir. 1980).

          c.        Other Law Enforcement Officers Awareness of the Defendant's Apparent Drug Selling Activities

Through consultation with other law enforcement officers, Detective Copeland learned that $6,700 in cash was recovered from a car associated with Mr. Maddox and this cash was seized for civil forfeiture as suspected proceeds of a crime. Id. Detective Copeland also learned from law enforcement officers that suspected heroin was found on the ground near to the defendant, however, the defendant was not arrested because of insufficient proof that the heroin belonged to him.[2]

          d.        The Defendant's Criminal History Indicates That He Is a Violent Individual Who Has Been Arrest For Armed Offenses

The search warrant affidavit further explains that the defendant had been arrested for violent offenses, including weapons-related offenses. (SW at 3). In particular, the affidavit explains that Mr. Maddox was arrested and charged in Washington, D.C., for carrying a pistol without a license and possession with intent to distribute PCP. Id. The affidavit also explains that this arrest resulted in the defendant's subsequent conviction for the Federal offense of unlawful possession of a firearm by a convicted felon. Id. Although the defendant notes in his initial motion at page 6 that his conviction was subsequently overturned on appeal and he was acquitted at a retrial, the government

---

[2] At the hearing on the defendant's motion, the government anticipates that testimony will be provided that, subsequent to the issuance of the warrant and in preparation for the hearing in this case, Detective Copeland learned that the seizure of the $6,700 in cash occurred on June 6, 2007, but the recovery of the illegal drugs near to the defendant occurred on a later date. Anticipated testimony will also be provided that Detective Copeland learned, subsequent to the issuance of the warrant and in preparation for the hearing in this case, that the $6,700 was recovered from a car which the defendant was believed to have been driving but that car was not registered to the defendant.

anticipates that the testimony at the hearing will indicate that Detective Copeland's search of the defendant's criminal history did not reveal the subsequent history of this conviction.[3] In addition, because the search warrant is premised on the standard of "probable cause," rather than "beyond a reasonable doubt," of criminal activity, the defendant's alleged criminal activity in that case would still have value in supporting the warrant request because the defendant would have been acquitted based on the more stringent standard.

Moreover, the affidavit sets forth the defendant's additional violence-related arrests: 1) in 1980, the defendant was charged with attempted armed robbery in Maryland; 2) in 1982, the defendant was arrested in Maryland for assault with intent to maim; and 3) in 2001, the defendant was arrested in Washington, D.C., for simple assault. Id.

        2.       The Affidavit Demonstrates that the Defendant Was Closely Connected to the Targeted Address of 5025 Sheriff Road, N.E.

              a.       Detective Copeland's Investigation Revealed that the Defendant Regularly Used the Targeted Address

The affidavit explains that Detective Copeland personally conducted surveillance of 5025 Sheriff Road, N.E. (SW at 2). During this surveillance, Detective Copeland saw the car registered to the defendant parked "at this address" on at least three occasions. Id. This surveillance was conducted in the early morning hours, such as 3:00 a.m. and 4:00 a.m., when it was believed that the people residing at the address would be asleep. Id. Notably, in the defendant's initial motion, he states that the defendant's car could not have been parked "at" 5025 Sheriff Road, N.E., because there is no designated parking spot for that address. However, at the hearing on his motion, the

---

[3] We note that the original Pretrial Services Agency report in this case, dated October 1, 2007, also indicates that the defendant was convicted in case CR96-000151, and does not indicate the subsequent history of this conviction.

8

government anticipates that Detective Copeland will testify that he saw the defendant's car parked on the street near the front of this address, which is where an occupant of this residence would most likely park. Detective Copeland is also anticipated to testify that he actually saw the defendant enter the premises located at 5025 Sheriff Road, N.E.

The affidavit further explains that the address of 5025 Sheriff Road, N.E., is very well-situated to act as a location for the defendant to store narcotics prior to selling them on Division Avenue, N.E. (SW at 2). In particular, the affidavit states that the 5000 block of Sheriff Road, N.E., is two blocks west of where Division Avenue, N.E., and Sheriff Road, N.E., come together at Eastern Avenue, N.E. Id.

Moreover, the affidavit explains that, through other investigative techniques, Detective Copeland has received additional information indicating that the defendant regularly uses the townhouse located at 5025 Sheriff Road, N.E., as a base of operations before going out to sell heroin on Division Avenue, N.E. Detective Copeland has also learned that another resident of the townhouse at 5025 Sheriff Road, N.E., is the defendant's close family member.

      3.    There Is Ample Connection Between The Target Address and The Defendant's Criminal Activity

In his initial motion at paragraph 14, the defendant argues that the defendant's alleged illegal activities are not "of a scale and type that would make it likely that evidence of those activities would be found in any place where he was staying" and would not justify a search of the address of 5025 Sheriff Road, N.E. However, the Court of Appeals has consistently held that observations of illegal activity occurring away from a suspect's residence can provide probable cause for the issuance of a search warrant for the suspect's home, even in the absence of direct evidence that illegal activity

occurred in the home. Johnson, 437 F.3d at 71-72 (upholding search warrant for defendant's home, although no direct evidence of drug activity in the house, based on proof that a resident in the house was an active drug dealer and expert opinion that drug traffickers frequently keep contraband and items of evidentiary value at their residences); Thomas, 989 F.2d at 1254-1255 (substantial evidence supported finding of probable cause to issue warrant to search defendant's house for illegal drugs, even though police officer's affidavit in support of application for search warrant offered no direct evidence that criminal activity occurred at defendant's house; affidavit stated that officer had received information from reliable informant that defendant was selling cocaine and heroin in another quadrant of the city, and affiant stated that in his experience drug dealers frequently kept business records, narcotics, proceeds from sales, and firearms in their homes).

     Here, the affiant, a seasoned drug detective, based on his experience from participation in numerous narcotics cases, stated a variety of reasons for why a suspected armed drug dealer such as the defendant would keep items related to his illegal activities at his home. (See SW at 3-5). For example, the affidavit explains that "[m]ost drug sellers use their homes as the main place to store what they use in their business, including drugs they are waiting to sell, records of their business, and money they have made." (SW at 4). Senior Judge Tignor was entitled to "give considerable weight to the conclusions of this experienced law enforcement officer regarding where evidence of a crime was likely to be found." United States v. Hodge, 246 F.3d 301, 307 (3d Cir. 2001) (Alito, J.) (internal citation, quotation marks, and punctuation omitted). See also United States v. Laws, 808 F.2d 92, 103 (D.C. Cir. 1986)("Law-enforcement officers may draw upon their expertise in translating activity that appears innocuous to the untrained mind into grounds supporting a search or arrest warrant."); United States v. Feliz, 182 F.3d 82, 88 (1st Cir. 1999) (not unreasonable for

judicial officer to have relied upon common sense buttressed by affiant's opinion as a law-enforcement officer that defendant would be likely to keep proceeds from his drug trafficking and records relating to drug transactions at his apartment); United States v. Caicedo, 85 F.3d 1184, 1192 (6th Cir. 1996)(conclusion of experienced law-enforcement officer regarding where evidence is to be found may be given "considerable weight" by an issuing judge). Thus, Senior Judge Tignor's finding that there was probable cause for the search, like the same findings based on similar evidence and investigator expertise upheld in Johnson and Thomas, was entirely appropriate.

      B.      In Any Event, Suppression Is Not The Remedy, Because Under Leon, Police Had A Good Faith Basis To Execute The Search Warrant

Even if this Court were to find the warrant lacked probable cause, suppression by the trial court would not be the appropriate remedy as the officers conducting the search acted in "objectively reasonable reliance" on the warrant's validity. United States v. Leon, 468 U.S. 897, 922 (1984). Ordinarily, the existence of a warrant is sufficient to establish that the officers acted in good faith in conducting the search. Id. Suppression in such a case is appropriate only if "the magistrate abandoned his detached and neutral role" in assessing the affidavit, or if "the officers were dishonest or reckless in preparing their affidavit or could not have harbored an objectively reasonable belief in the existence of probable cause." Id. at 926.

There is no evidence here that the affidavit on its face was so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable. As discussed above, Senior Judge Tignor concluded that the affidavit presented a substantial basis for probable cause. Absent some information that the Detective Copeland knew that what he was stating in the affidavit was

wrong – which is simply not supported by the evidence – there is no basis under Gates or Leon to overturn the warrant decision.

III.     The Search of the Defendant's Car Was Proper

Contrary to defendant's assertion at pages 19-20 of his initial motion, law enforcement officers properly searched the defendant's car based on probable cause after a trained, reliable police dog alerted the officers to the scent of contraband inside the car.

    A.     A Trained, Reliable Police Dog Alerted to the Scent of Contraband Inside the Car

At the hearing on the defendant's motion, the government anticipates that testimony will be provided that officers used a trained, reliable police dog to sniff the outside of the defendant's car after the defendant exited. While the police dog sniffed the outside of the car, the dog alerted to the scent of contraband inside the car. Further testimony will explain that this dog is well-trained in the search of contraband and has provided reliable information to law enforcement officers on prior occasions. In addition, this testimony will clarify that the inside of the defendant's car was not searched until this dog alerted to the presence of contraband inside the car.

    B.     The Police Dog's Alert To The Presence Of Contraband Provided Probable Cause To Search The Inside Of The Car

In light of the police dog's training, his alert established probable cause to believe that there were narcotics in the defendant's vehicle. Courts have accepted dog sniff evidence for over one hundred years. See, e.g., Blair v. Commonwealth, 204 S.W. 67 (Ky. Ct. App. 1918) (collecting cases). Our Court of Appeals has specifically held that the actions of a trained dog may provide probable cause for a search. United States v. Tartaglia, 864 F.2d 837, 840 & 842 (D.C. 1989) (probable cause to search train roomette when dog "scratched" at door and whined); United States

v. Fulero, 498 F.2d 748, 749 (D.C. Cir. 1974) (dog's indication of narcotics established probable cause to search a foot locker).  In addition, other courts have repeatedly stated that a trained dog's reaction to the scent of narcotics provides probable cause to search an automobile.  See, e.g., United States v. Jeffus, 22 F.3d 554, 557 (4th Cir. 1994) ("When dog 'alerted positive' for the presence of drugs, the officer was given probable cause for the search that followed."); United States v. Seals, 987 F.2d 1102, 1106-07 (5th Cir. 1993) (dog alert gives probable cause to search vehicle).

Moreover, while the police dog's alert alone provided probable cause to search the defendant's vehicle, additional factors added to the calculus.  These factors include that: 1) law enforcement officers could see that a small empty plastic bag – consist with the type of bag used to package narcotics for sale on the street – was in plain view inside the car, and 2) the defendant was believed to have recently returned from selling narcotics on the street and the defendant could likely have used his car to store some of these narcotics.  "Probable cause exists where 'the facts and circumstances within their [the arresting officers'] knowledge and of which they had reasonably trustworthy information [are] sufficient in themselves to warrant a man of reasonable caution in the belief that' an offense has been or is being committed." Draper v. United States, 358 U.S. 307, 313 (1959) (quoting Carroll v. United States, 267 U.S. 132, 162 (1925)); accord United States v. Caroline, 791 F.2d 197, 201 (D.C. Cir. 1986) ("Probable cause for a search exists where 'there is a fair probability that contraband or evidence of a crime will be found in a particular place.'") (quoting Illinois v. Gates, 462 U.S. 213, 238 (1983)).

Having probable cause to believe that there was contraband in the defendant's vehicle, the officers had the right to search the entire vehicle.  United States v. Ross, 456 U.S. 798, 825 (1982) (police may search every part of a vehicle and container within the vehicle that may conceal the

object of the search if they have a generalized belief that the vehicle contains contraband somewhere inside); United States v. Harwood, 998 F.2d 91, 97 (2nd Cir. 1993) (warrantless search of door panels permissible as LSD in blotter form can be stashed anywhere in vehicle); United States v. Bullock, 94 F.3d 896, 899 (4th Cir. 1996) (officer could forcibly remove secret compartment under back seat because he had probable cause to believe that car contained contraband); United States v. Zucco, 71 F.3d 188, 191-92 (5th Cir. 1995) (warrantless search of entire recreational vehicle including dismantling of vehicle wall permissible because probable cause to believe cocaine present); United States v. Lumpkin, 159 F.3d 983, 986 (6th Cir. 1998) (warrantless search of locked trunk and engine compartment valid because officer had probable cause to search entire vehicle for drugs); United States v. Thornton, 197 F.3d 241, 247-49 (7th Cir. 1999) (warrantless search of hidden compartment in vehicle permissible where probable cause to search vehicle existed); United States v. Sample, 136 F.3d 562, 564 (8th Cir. 1997) (warrantless search of dashboard compartment valid because officer had probable cause to believe vehicle transporting contraband).

IV. Police Officers Properly Secured And Relocated The Defendant From The Street In Front Of The Townhouse To Inside The Townhouse During The Execution Of The Search Warrant

Contrary to the defendant's assertion at pages 17-19 of his initial motion, the officers properly secured the defendant when he exited his car and moved him inside the townhouse.

    A. The Officers Properly Detained The Defendant During The Execution Of The Search Warrant

Contrary to the defendant's suggestion, the police officers could properly detain the defendant while they executed the search warrant, even though he was initially on the street in front of the residence and not inside it. In Michigan v. Summers, 452 U.S. 692, 705 (1981), the Supreme Court held that "a warrant to search for contraband founded on probable cause implicitly carries with

it the limited authority to detain the occupants of the premises while a proper search is conducted." In Summers, police stopped the defendant as he was "descending the front steps" and not inside of the premises. Id. at 693. The Supreme Court noted that the detention of the defendant was justified to prevent flight of the individual, to minimize the risk of harm to the officers, and to effectuate an orderly completion of the search. Id. at 702-03.

Here, the officers similarly and properly detained the defendant, even though he was initially outside but near to the premises, to prevent his flight, minimize the risk of harm to the officers, and to effectuate an orderly completion of the search. As detailed above, the search warrant was based on probable cause that the defendant was actively engaging in the dangerous activity of selling narcotics while armed with gun, and sets forth his prior arrests for other dangerous crimes. Moreover, the officers encountered the defendant early in the morning at approximately 7:15 a.m., which is the time that he was suspected of engaging in his armed drug selling activity, and, as a result, the likelihood that he was armed at that time was heightened.

Accordingly, as the Supreme Court in Summers recognized, the defendant did not have to be inside of the premises to be lawfully detained. see also United States v. Cochran, 939 F.2d 337, 338 (6th Cir.1991) (finding no Fourth Amendment violation where the police went to the defendant's house to execute a search warrant, observed him leaving the premises by car, and the car traveled a short distance before it was stopped by the police and the defendant was detained for the search); United States v. Yates, 132 F.Supp.2d 559 (E.D.Mich.2001) (holding the stop of a defendant two miles from his home, when he was traveling away from his residence, did not violate the defendant's Fourth Amendment rights).

      B.      The Officers Were Also Justified In Moving The Defendant From The Street To Inside The Townhouse Consistent With The Bounds Of An Investigatory Stop

To the extent that the stop of the defendant outside his car is construed as investigatory in nature, the officers could still properly move him from the street to inside the townhouse to achieve the legitimate goals of safety and security while they investigated his armed drug dealing activity, by searching his car and his residence. See United States v. Nurse, 916 F.2d 20, 24-25 (D.C.Cir. 1990) (holding that officers' conduct in preventing defendant from getting into a taxi and escorting her back into the train terminal did not "exceed[ ] the established bounds for reasonable suspicion detentions") (citation omitted); see also United States v. Charley, 396 F.3d 1074, 1080 (9th Cir. 2005) (recognizing that "we have held that the police may move a suspect without exceeding the bounds of an investigative detention when it is a reasonable means of achieving the legitimate goals of the detention "given the specific circumstances" of the case); United States v. Gori, 230 F.3d 44, 56 (2d Cir. 2000) (recognizing that "it is well established that officers may ask (or force) a suspect to move as part of a lawful Terry stop").

WHEREFORE, the government respectfully requests that the Court deny defendant's initial motion and supplemental motion to suppress evidence, statements, and other information.

        Respectfully submitted,

        JEFFREY A. TAYLOR
        UNITED STATES ATTORNEY

By:   OPHER SHWEIKI
      Assistant United States Attorney
      Bar No. 458776
      Federal Major Crimes Section
      555 4th Street, N.W.
      Washington, D.C. 20530
      (202) 353-8822
      Opher.Shweiki@usdoj.gov