UNITED STATES DISTRICT COURT FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | )( | |
| | )( | Criminal No. 07-288 |
| v. | )( | Judge Friedman |
| | )( | Motions Hearing: May 1, 2008 |
| EDWARD MADDOX | )( | |

**REPLY TO GOVERNMENT'S SUPPLEMENTAL, POST-HEARING BRIEF
IN OPPOSITION TO DEFENDANT'S MOTION TO SUPPRESS
EVIDENCE, STATEMENTS, AND INFORMATION**

COMES NOW the defendant, Edward Maddox, by and through undersigned counsel, and respectfully replies to the Government's Opposition to Defendant's Memorandum in Support of Motion to Suppress Evidence, Statements, and Information. In support of this reply, Mr. Maddox would show:

1.  On March 4, 2008, Mr. Maddox filed a Motion to Suppress Evidence, Statements, and Information and Points and Authority in Support thereof (Motion).

2.  On March 17, 2008, the government filed a Government's Opposition to Defendant's Motion to Suppress Evidence, Statements, and Other Information (Original Opposition).

3.  On March 26, 2008, an evidentiary hearing was held on the Motion. At the conclusion of the hearing, the parties agreed to further brief the Fourth Amendment issues that Mr. Maddox was raising.

4.  On April 15, 2008, Mr. Maddox filed a Memorandum of Points and Authority in Support of Defendant's Motion to Suppress Evidence, Statements, and Information (Memorandum).

1

5.      On April 24, 2008, the government filed a Government's Supplemental, Post-Hearing Brief in Opposition to Defendant's Motion to Suppress Evidence, Statements, and Other Information (Supplement to Opposition).

6.      Mr. Maddox is now replying to the Supplement to Opposition.

## DISCUSSION

### A. Brief Restatement of Facts

On September 29, 2007, police officers executed a search warrant for 5025 Sheriff Road, N.E. At the time, the police believed that Mr. Maddox was using the residence in connection with his alleged drug-dealing activities. Even though they had no warrant for his arrest, it was the officers' intention to seize Mr. Maddox before executing the search warrant. Tr. at 100.[1] When the police arrived to execute the search warrant at 5025 Sheriff Road, N.E., they determined that Mr. Maddox was not home. They expected that, when he did come home, he would be arriving by car. Accordingly, the police waited for Mr. Maddox to arrive in his car so that they could seize him then before executing the warrant. Tr. at 70-71, 98. The team that was executing the search warrant included a police officer with a trained drug-detection dog. The officer and his dog were kept on standby at a nearby location. Tr. at 11, 17. After the police had been waiting for a period of time, Mr. Maddox arrived in his car and started parking it on a nearby public street. Just after Mr. Maddox had parked his car, Detective Copeland used his police car to "block" Mr. Maddox's car. The Detective then "jumped out" of his police car and

---

[1] The transcript being referred to is the transcript for the evidentiary hearing on Mr. Maddox's Motion that was held on March 26, 2008.

confronted Mr. Maddox, who at this point had now exited his car as well. Tr. at 71-72. Detective Copeland then patted Mr. Maddox down for weapons and went into Mr. Maddox's pocket and retrieved his keys. Mr. Maddox was placed in handcuffs. Tr. at 73, 102. Then, Detective Copeland and seven or eight other officers escorted Mr. Maddox from his car to 5025 Sheriff Road, N.E. Tr. at 101, 107-08. At this point, "the drug dog had hadn't arrived yet." Tr. at 73. Once the drug dog did arrive, the dog was walked around Mr. Maddox's car. When the dog alerted on Mr. Maddox's car, the police searched the car, allegedly finding a small quantity of drugs inside the car and a pistol in the trunk. Tr. at 16-17, 30, 33. The only service the dog performed during the events related to the execution of the search warrant was to determine if the odor of drugs was emanating from Mr. Maddox's car. Tr. at 25.

### B. Seizure of Mr. Maddox

In its Original Opposition, the government sought to justify the seizure of Mr. Maddox that occurred on September 29, 2007 under the rule created by the Supreme Court in Summers v. United States, 452 U.S. 692 (1981). Original Opposition at 14-15. In Summers the Supreme Court held that, when executing a search warrant, police officers are permitted to conduct a Terry stop on persons who are located on the premises. Id. at 705. Some lower courts have extended the rule announced in Summers to justify the seizure of persons associated with the premises even when those persons are outside—provided they are in the general vicinity of the premises. See, e.g., United States v. Cochran 939 F.2d 337 (6th Cir. 1991). In its Original Opposition, the

government argued that the rule announced in <u>Summers</u> applied to the seizure of Mr. Maddox because Mr. Maddox was nearby to 5025 Sheriff Road, N.E. at the time that the warrant was going to be executed.  Original Opposition at 15.

   In his Memorandum, Mr. Maddox points out that the rule announced in <u>Summers</u> could not apply to his seizure.  Mr. Maddox notes that, before the police applied for the search warrant, they appear to have developed probable cause that he had been engaging in drug-dealing.  Moreover, since the police obviously had time to get a search warrant for 5025 Sheriff Road, N.E., they obviously had time to get a warrant for Mr. Maddox's arrest as well.  Nevertheless, instead of getting a warrant for his arrest, the police orchestrated events to make sure that Mr. Maddox would be present at the scene when they executed the search warrant so that they could then seize him pursuant to the execution of that search warrant, thus circumventing the warrant requirement for his arrest.  Mr. Maddox points out that courts—including the United States Supreme Court—have consistently held that the Fourth Amendment does not allow the police to justify warrantless seizures based on circumstances that the police themselves manufacture.  Memorandum at 16-20.  Additionally, Mr. Maddox points out that the search warrant for 5025 Sheriff Road, N.E. was obtained in violation of <u>Franks v. Delaware</u>, 438 U.S. 154 (1978), and that the warrant and the subsequent search based on the warrant were invalid.  Memorandum at 21-28.  Thus, the police cannot use the existence of the search warrant to justify Mr. Maddox's seizure.  For this reason, too, the rule announced in <u>Summers</u> would not apply to Mr. Maddox's seizure.  <u>Id.</u> at 26-27.

In the Supplement to Opposition, the government does not attempt to counter Mr. Maddox's arguments that the rule announced in Summers is inapplicable to his seizure. Rather, the government now puts forth a new, unrelated argument in an effort to justify Mr. Maddox's seizure. Claiming that the seizure of Mr. Maddox did not "exceed the established bounds" for investigatory detentions made pursuant to Terry, the government now argues that Mr. Maddox's seizure was valid because it was based upon reasonable articulable suspicion particular to him. Supplement to Opposition at 13-17. The government notes that, before the search warrant for 5025 Sheriff Road, N.E. was ever applied for, Detective Copeland had been investigating Mr. Maddox. Id. at 2-4. During this investigation, the Detective had developed probable cause that Mr. Maddox was, at that time, engaging in criminal activity. Id. at 15. As part of his investigation, Detective Copeland was physically surveilling Mr. Maddox, and on numerous occasions, the Detective had personally witnessed Mr. Maddox engaging in apparent drug-dealing activities. Id. at 2, 4, 15. The government's argument is that, solely because of this previously developed probable cause regarding Mr. Maddox's earlier activities, the police had sufficient grounds for conducting a Terry stop on Mr. Maddox when they encountered him on September 29, 2007. Id. at 13-15. This argument is fundamentally flawed.

Even if it is admitted for the sake of argument that Mr. Maddox's seizure could properly be characterized as a Terry stop, that seizure still could not be justified simply because the police had previously developed probable cause to believe that Mr. Maddox had been engaging in illegal activities at some earlier time. The Court in Terry expressly

5

stated that, in permitting the police to make investigatory detentions upon less than probable cause in some circumstances, "[w]e do not retreat from our holdings that the police must, whenever practicable, obtain advance judicial approval of searches and seizures through the warrant procedure." Terry v. Ohio, 392 U.S. 1, 20 (1968). The Court then went on to say that, even in the context of investigatory detentions upon less than probable cause, "the notions which underlie… the warrant procedure… remain fully relevant." Id. Adherence to the warrant requirement, of course, means that, if there is in fact no warrant for the search or seizure, then "there must be 'a showing by those who seek exemption [from the warrant requirement]… that the exigencies of the situation made that course [foregoing the warrant] imperative.'" Coolidge v. New Hampshire, 403 U.S. 443, 455 (1971) (quoting Katz v. United States, 389 U.S. 347, 357 (1967); see also Terry, 392 U.S. at 25 (in order to be permissible under Terry, police conduct must be "strictly circumscribed by the exigencies which justify its initiation").

  Here, the government has not shown that any exigent circumstances existed to justify the warrantless seizure of Mr. Maddox. At the time that Mr. Maddox was seized, the police had observed nothing at the location of his seizure that would have given them any reason for believing that he was or had been engaging in illegal activities. Indeed, the only justification the government claims for Mr. Maddox's seizure is that, during an earlier investigation, Detective Copeland had developed probable cause that Mr. Maddox was, at that time, engaging in illegal activities. However, the government does not even try to explain why, once Detective Copeland had developed that probable cause, the police did not get a warrant for Mr. Maddox's arrest, even though they clearly had time to

do so—as evinced by the fact that they were able to get a search warrant for 5025 Sheriff Road, N.E. Additionally, the government does not even try to explain why, all of sudden, it was now necessary for the police to seize Mr. Maddox. The police officers' own actions towards Mr. Maddox undercut any claim that seizing Mr. Maddox was imperative. There are no indications that the police had been attempting to seize Mr. Maddox before they encountered him on September 29, 2007, even though Detective Copeland was physically surveilling Mr. Maddox and clearly knew where he was. In short, the only way to find that the seizure of Mr. Maddox was a permissible Terry stop would be to accept the untenable proposition that, once the police develop probable cause that a person has a committed a crime, they are then free to ignore the warrant requirement altogether and simply seize that person whenever they please at any time in the future.

It should also be pointed out that, though the government is attempting to describe Mr. Maddox's seizure as one that did not "exceed the established bounds" of a Terry stop, the fact remains that this is simply not true  Here, it is uncontroverted that, when the Detective Copeland seized Mr. Maddox, he went into Mr. Maddox's pocket and retrieved his keys. As Mr. Maddox points out in his Memorandum, The United States Court of Appeals for the District of Columbia Circuit, in Holmes v. United States, 505 F.3d 1288, 1292-93 (D.C. Cir. 2007), recently made clear that when a police officer goes into a suspect's pocket and retrieves the suspect's keys, the officer has exceeded the scope of a Terry stop and his actions must be justified—if at all—by probable cause. Memorandum at 14-15. In its Supplement to Opposition, the government does not take

issue with Mr. Maddox's argument that the retrieval of the keys from his pocket took his seizure outside the bounds of a <u>Terry</u> stop. Rather, the government simply ignores the argument—and the District of Columbia Circuit's holding in the <u>Holmes</u> case—altogether. Nevertheless, the point remains that Mr. Maddox's seizure was more than a <u>Terry</u> stop because, if for no other reason, the police went into his pocket and seized his keys.

Since the seizure of Mr. Maddox was more than a <u>Terry</u> stop to begin with and since it still would not have been justified even if it had been one, the seizure was illegal. Accordingly, all evidence recovered as fruit of that illegal seizure must be suppressed. Obviously, this would include the evidence that was recovered from Mr. Maddox's person. Additionally, as discussed in the next section, this would also include the evidence recovered from Mr. Maddox's car.

### **C. Search of Car**

In its Supplement to Opposition, the government argues that the evidence recovered from Mr. Maddox's car was legally obtained because, prior to the search of the car, the police acquired probable cause for the search when the drug-detection dog alerted on the car. Supplement to Opposition at 10-13. However, in his Memorandum, Mr. Maddox points out that, had he not been illegally seized, he could have removed his car from the area and thereby prevented the drug-detection dog from having any access to his

car to begin with.[2]  Memorandum at 15.  Thus, Mr. Maddox argues that, because his illegal seizure secured the car for examination by the drug-detection dog and preceded any probable cause that the police may have developed as a result of the drug-detection dog's actions, all items of evidence recovered from his car were still tainted fruits of that illegal seizure.  Id.  The government ignores this argument in its Supplement to Opposition.

Even if the car in question has already been parked, courts across the country have consistently held that, when a person is illegally seized in connection with that car, any evidence discovered in a subsequent search of the car is tainted by the illegal seizure—even if the police develop otherwise legitimate grounds for the search based on an examination of the car after the illegal arrest.  See, e.g., State v. Burroughs, 914 A.2d 592, 597-601 (Conn. App. 2007) (where police without even a reasonable suspicion approached already parked car with sufficient show of authority and force to make encounter with occupant of car a seizure, it was "impossible to separate" the illegal seizure of the occupant from the observation of drugs in plain view inside the car, and recovery of drugs was therefore come at by exploitation of the illegal seizure, warranting suppression of the drugs); Hicks v. United States, 705 A.2d 636 (D.C. 1997) (where police illegally seized defendant when they blocked in the parked car he was sitting in with their car and then approached with guns drawn, evidence that officers subsequently observed in plain view inside car was fruit of the illegal seizure); State v. Hanson, 501

---

[2] Had he not been illegally seized, Mr. Maddox could also have removed the drugs and the gun from the car.  If he had done so, then either the dog would never have smelled the drugs or, if he did smell the drugs, no contraband would have been found in the subsequent search.

9

N.W.2d 677 (Minn. App.1993) (where officer observed defendant outside a car stopped on the shoulder of the highway, pulled up behind car, and activated his overhead lights, there was an illegal seizure of the defendant, and observation of open beer can in plain view in car was tainted fruit of that illegal seizure, warranting suppression of the beer can and other evidence obtained as a result of defendant's arrest for possession of open container); <u>Commonwealth v. Helme</u>, 503 N.E.2d 1287, 1289-90 (Mass. 1987) (where illegal seizure of occupant of already parked car was effected by blocking his car with a police car, the evidence discovered in plain view inside the car was tainted fruit of the illegal seizure).

Very recently, in <u>Commonwealth v. Knowles</u>, 883 N.E.2d 941 (Mass. 2008), the Supreme Judicial Court of Massachusetts confronted a situation in which a police officer responded to a location because of a report regarding a man "swinging a baseball bat." When the officer got to the location, he observed the defendant, who had a baseball bat, leaning into the open trunk of a car. When the defendant noticed the officer, he retrieved "something" from his pocket and threw it into the trunk. The officer then asked the defendant to "stop" and "step away from the car" and then to "come towards" the officer. The defendant complied. When other officers arrived at the scene and took custody of the defendant, the first police officer went over to the car and looked in the trunk, seeing several quantities of illegal drugs. <u>Id.</u> at 91-92. The Massachusetts Supreme Judicial Court concluded that the defendant had been seized when the officer gave him the verbal commands to "stop," "step away from the car," and "come towards" the officer. <u>Id.</u> at 94. Moreover, the court found that the seizure was illegal because, at the time that the

officer gave the defendant the verbal commands, the officer did not have even a reasonable suspicion that the defendant was engaging in criminal activity. Id. at 99. The Court then ruled that the drugs the officer saw in the trunk of the car must be suppressed. The court noted that, because the defendant had been illegally seized, he was prevented "from doing anything"—including possibly closing the trunk to keep the police from seeing the drugs. The court then stated that the "plain view" doctrine did not apply because the officer's observation of the drugs was "preceded and facilitated" by the defendant's illegal arrest. Id. at 100.

For the purposes of any "fruits" analysis, the situation regarding Mr. Maddox's seizure cannot be meaningfully distinguished from the situation regarding the defendant's seizure in Knowles. Just as the illegal seizure of the defendant in Knowles prevented him from possibly closing his trunk to keep the police from seeing the drugs, the illegal seizure of Mr. Maddox prevented him from possibly driving away to avoid further involvement with the police and keep them from examining his car—either with their own eyes or with a drug-detection dog.[3] Obviously, when Detective Copeland seized Mr. Maddox, he perceived that there was a real possibility that Mr. Maddox might in fact decide to drive away, for the first thing that the Detective did was to block in Mr. Maddox's car with his police car. It should be stressed at this point that, in order to avail itself of the "independent source" doctrine, the government must show that the evidence it seeks to admit came "from a source wholly independent of the constitutional violation."

---

[3] It is worthwhile to point out here that the police cannot justify a seizure on the mere grounds that a person seeks to avoid contact with them. Maryland v. Dennis, 522 U.S. 928(1997). Indeed, if a person is not free to avoid contact with the police, then by definition a seizure has occurred. United States v. Brignoni-Ponce, 422 U.S. 873, 878 (1975).

United States v. Six Hundred Thirty-Nine Thousand Five Hundred and Fifty-Eight ($639,558) in United States Currency, 955 F.2d 712, 719 (D.C. Cir. 1992) (emphasis added) (citing Silverthorne Lumber Co. v. United States, 251 U.S. 385, 392 (1920); Alderman v. United States, 394 U.S. 165, 183 (1969)).  Here, especially since the illegal seizure of Mr. Maddox was effected, in part, by blocking in his car and taking his keys away from him, it cannot be credibly claimed that the car's availability for examination by the drug-detection dog was secured by means wholly independent of that illegal seizure.  This seems even more apparent when it is remembered that the police specifically waited for Mr. Maddox to arrive in his car so that they could seize him then and that they had a drug-detection dog with them for, evidently, the sole purpose of examining the car.

   For its part, as already stated, the government does not claim that the evidence recovered from the car was not fruit of Mr. Maddox's seizure.  Supra at 9.  Indeed, the government now actually claims that the evidence from the car was direct fruit of Mr. Maddox's seizure, in that it now claims that the evidence was recovered in a search incident to Mr. Maddox's arrest.  Supplement to Opposition at 17-20.  Thus, in its Supplement to Opposition, the government does not take issue with Mr. Maddox's claim that the evidence recovered from the car was fruit of his seizure but rather with his claim that this seizure was illegal to begin with.  Again noting that the police had previously developed probable cause to believe that Mr. Maddox had been involved in illegal activities on earlier occasions, the government argues that the police were therefore justified in arresting Mr. Maddox when they encountered him on September 29, 2007.

Id. However, again as already discussed, given that it was effected without a warrant and without exigent circumstances, Mr. Maddox's seizure cannot be justified even as a Terry stop. Supra at 5-7. Thus, it cannot be justified as a full-blown arrest either.

In its Supplement to Opposition, the government grounds its argument that the police legally arrested Mr. Maddox because of previously acquired probable cause regarding earlier crimes on a simplistic (and unconstitutional) reading of D. C. Code, Section 23-581(a)(1), which is the statute that permits a law enforcement officer to make a warrantless arrest whenever "he has probable cause to believe a person has committed or is committing a felony." Supplement to Opposition at 17 n.7. However, this statute does nothing to relive a police officer of his constitutionally mandated duty to show the existence of exigent circumstances when he makes a warrantless seizure, and even if it did, it would not matter because no statute can trump the Constitution. For this reason, it is a "cardinal principle" of statutory construction that, if at all possible, statutes are to be interpreted so as not to offend the Constitution. DeBartolo Corp. v. Florida Gulf Coast Trades Council, 485 U.S. 568, 575 (1988). While the District of Columbia City Council may have authorized police to make arrests without a warrant for crimes previously committed, the fact remains that the Constitution only permits them to do so if they can show that there were exigent circumstances that made it imperative to act without waiting to obtain a warrant. Coolidge, 403 U.S. at 455. Here, of course, the government has not even made an attempt to show that exigent circumstances existed for Mr. Maddox's warrantless seizure, and in fact no such circumstances did exist. See supra at 6-7.

Where the government seeks to uphold a search on the grounds that it was conducted incident to an arrest and where that arrest then turns out to have been illegal, the evidence must be suppressed. Whiteley v. Warden, 401 U.S. 560, 568 (1971) (because petitioner's arrest was illegal, the evidence recovered from his car in a search incident to that arrest had to be suppressed). As the Fifth Circuit has noted, "[T]he fourth amendment decidedly does not sanction a search incident to an illegal arrest." United States v. Blount, 98 F.3d 1489, 198 (5th Cir. 1996) (citing Oregon v. Elstad, 470 U.S. 298 (1985). Here, the government claims that the search of Mr. Maddox's car was conducted incident to his arrest. However, since no exigent circumstances existed to justify the warrantless seizure of Mr. Maddox, his seizure was illegal to begin with. Accordingly, all evidence recovered from the car must be suppressed.

### D. Seizure of Car

In his Memorandum, Mr. Maddox points out that his car was seized independent of the seizure of his person. Mr. Maddox notes that, when they seized him, the police blocked his car, took his keys, removed him from the presence of the car, and left several police officers stationed with the car to await the arrival of the drug-detection dog. Mr. Maddox argues that the seizure of the car was illegal because, at the time that the car was seized, the police had not developed even a reasonable suspicion that the car was involved in illegal activities. Memorandum at 20-21. In its Supplement to Opposition, the government does not dispute Mr. Maddox's claim that his car was seized, nor does it attempt to justify that seizure. Mr. Maddox now reiterates his claim that the car itself was

seized to make the following point: even if for some reason the Court were to find that the search of Mr. Maddox's car was not "come at by exploitation" of his illegal seizure, the Court must nevertheless still find that the search of the car was illegal because it was at least "come at by exploitation" of the car's illegal seizure.

### E.  Illegal Execution of Warrant

In its Supplement to Opposition, the government argues that any illegalities associated with the execution of the search warrant at 5025 Sheriff Road, N.E. would not taint the evidence recovered from Mr. Maddox's car.  Quoting New York v. Harris, 495 U.S. 14, 19 (199), the government states that Mr. Maddox cannot make the necessary showing that the "challenged evidence is in some sense the product of illegal government activity."  Supplement to Opposition at 20-21.  In his Memorandum, however, Mr. Maddox points out that the police improperly manufactured the situation to justify his seizure by waiting until he arrived in his car before executing the warrant so that they could seize him pursuant to the rule announced in Summers v. United States, 452 U.S. 692 (1981), which permits the police to seize certain persons on or near the premises during the execution of a search warrant.  Memorandum at 15-20.  As Mr. Maddox notes, the fundamental illegality was not the improper seizure of his person but the manipulation of circumstances to circumvent the warrant requirement.  If the police had not manipulated the circumstances by waiting until Mr. Maddox arrived in his car before executing the search warrant, the car never would have been exposed to the drug-detection dog to begin with.  Id. at 19-20.  It should be remembered that the first thing the

police did when Mr. Maddox did finally arrive on the scene was to block his car and take his keys away from him. The police then moved Mr. Maddox from his car to 5025 Sheriff Road, N.E., leaving several police officers stationed with the car to await arrival of the drug-detection dog, who evidently had been brought in for no other purpose than to examine the car. Thus, it is hard to see how it can be claimed that Mr. Maddox has not shown that the evidence recovered from the car was "in some sense the product of" the illegal execution of the search warrant.

## CONCLUSION

WHEREFORE, the defendant, Edward Maddox, replies to Government's Supplemental Post-Hearing Brief in Opposition to Defendant's Motion to Suppress Evidence, Statements, and Information.

                                   Respectfully submitted,

                                   ____/s/_____
                                   Jerry Ray Smith
                                   Counsel for Edward Maddox
                                   717 D Street, N.W.
                                   Suite 400
                                   Washington, D.C. 20004