UNITED STATES DISTRICT COURT FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA )( | |
| )( | Criminal No. 07-288 |
| v. )( | Judge Friedman |
| )( | Motions Hearing: May 15, 2008 |
| EDWARD MADDOX )( | |

**DEFENDANT'S POST-HEARING BRIEF ON ISSUES RELATED
TO THE APPLICATION OF <u>UNITED STATES V. WATSON</u> TO HIS MOTION
TO SUPPRESS EVIDENCE, STATEMENTS, AND INFORMATION**

COMES NOW the defendant, Edward Maddox, by and through undersigned counsel, and respectfully makes the following arguments related to the application of <u>United States v. Watson</u>, 423 U.S. 411 (1976) to his Motion to Suppress Evidence, Statements, and Information.  In support of this filing, Mr. Maddox would show:

1.  On March 4, 2008, Mr. Maddox filed a Motion to Suppress Evidence, Statements, and Information and Points and Authority in Support thereof (Motion).

2.  On March 17, 2008, the government filed a Government's Opposition to Defendant's Motion to Suppress Evidence, Statements, and Other Information (Original Opposition).

3.  On March 26, 2008, an evidentiary hearing was held on the Motion.  At the conclusion of the hearing, the parties agreed to further brief the Fourth Amendment issues that Mr. Maddox was raising.

4.  On April 15, 2008, Mr. Maddox filed a Memorandum of Points and Authority in Support of Defendant's Motion to Suppress Evidence, Statements, and Information (Memorandum).

1

5. On April 24, 2008, the government filed a Government's Supplemental, Post-Hearing Brief in Opposition to Defendant's Motion to Suppress Evidence, Statements, and Other Information (Supplement to Opposition).

6. On April 28, 2008, Mr. Maddox filed a Reply to Government's Supplemental, Post-Hearing Brief in Opposition to Defendant's Motion to Suppress Evidence, Statements and Information (Reply to Supplement to Opposition).

7. On May 1, 2008, additional arguments on Mr. Maddox's Motion were held. The day before the hearing, the Court sent an e-mail to the parties directing them to be prepared at the hearing to discuss the effect of United States v. Watson, 423 U.S. 411 (1976) on Mr. Maddox's Motion. Watson holds that, at least in the presence of an authorizing statute, the police are permitted to make a warrantless arrest even without showing of exigent circumstances. Id. at 423-24. Later, at the hearing, it was agreed that the parties would submit additional filings regarding the Motion in light of Watson.

8. Mr. Maddox is now submitting this filing to address the issues related to the application of Watson to his Motion.

**BRIEF RESTATEMENT OF FACTS**

On September 29, 2007, police officers executed a search warrant for 5025 Sheriff Road, N.E. At the time, the police believed that Mr. Maddox was using the residence in connection with his alleged drug-dealing activities. Even though they had no warrant for his arrest, it was the officers' intention to seize Mr. Maddox before executing

the search warrant. Tr. at 100.[1] When the police arrived to execute the search warrant at 5025 Sheriff Road, N.E., they determined that Mr. Maddox was not home. They expected that, when he did come home, he would be arriving by car. Accordingly, the police waited for Mr. Maddox to arrive in his car so that they could seize him then before executing the warrant. Tr. at 70-71, 98. The team that was executing the search warrant included a police officer with a trained drug-detection dog. The officer and his dog were kept on standby at a nearby location. Tr. at 11, 17.

After the police had been waiting for a period of time, Mr. Maddox arrived in his car and started parking it on a nearby public street. Just after Mr. Maddox had parked his car, Detective Copeland used his police car to "block" Mr. Maddox's car. The Detective then "jumped out" of his police car and confronted Mr. Maddox, who at this point had now exited his car as well. Tr. at 71-72. Detective Copeland then patted Mr. Maddox down for weapons and went into Mr. Maddox's pocket and retrieved his keys. Mr. Maddox was placed in handcuffs. Tr. at 73, 102. Then, Detective Copeland and seven or eight other officers escorted Mr. Maddox from his car to 5025 Sheriff Road, N.E. Tr. at 101, 107-08. At this point, "the drug dog hadn't arrived yet," and there had yet to be any search of the car. Tr. 73. Accordingly, "several sergeants and several people [other police officers]" stayed with the car, waiting for the dog to arrive and to search the car. Tr. at 107-08. It was only at some undisclosed time after Mr. Maddox had been taken inside of 5025 Sheriff Road, N.E. that the drug-detection dog arrived at the scene, and it was only after that that the dog alerted on the car and the car was searched. Tr. at 16-17,

---

[1] The transcript being referred to is the transcript for the evidentiary hearing on Mr. Maddox's Motion that was held on March 26, 2008.

3

30, 33. The only service the dog performed during the events related to the execution of the search warrant was to walk around Mr. Maddox's car and sniff for the odor of drugs. Tr. at 25. At some point before the car was searched, Sergeant Neill looked in one of the windows and saw an empty green Ziploc bag in a rear seat cupholder. Tr. at 31-32, 38

At the evidentiary hearing, Detective Copeland testified about the affidavit in support of the search warrant for 5025 Sheriff Road, N.E. (Affidavit), which the Detective himself had sworn out. Tr. at 47. In the Affidavit, Detective Copeland states that, for the past month, he has been briefed by a confidential informant who has knowledge of Mr. Maddox's activities. According to the Affidavit, this informant claims that Mr. Maddox sells drugs on the street and carries a pistol while doing so. Affidavit at 2. Additionally, in the Affidavit, Detective Copeland states that, on at least three different occasions, he has personally observed Mr. Maddox engage in a number of hand-to-hand transactions with different persons wherein Mr. Maddox would give the other persons a small object in return for money. During the evidentiary hearing, Detective Copeland repeated and elaborated on the assertions he made in the Affidavit. Tr. at 54, 80-81.

**ARGUMENTS**

The seizure of Mr. Maddox that occurred on September 29, 2007 was more than a Terry stop. At the very least, the fact that Detective Copeland went into Mr. Maddox's pocket and retrieved his keys took the seizure outside the scope of Terry, thus turning it into an arrest that can only be justified upon probable cause. Holmes v. United States,

4

505 F.3d 1288, 1292-93 (D.C. Cir. 2007).  The government argues that, based on the claims that Detective Copeland made regarding his earlier investigation into Mr. Maddox's activities, the police did in fact have probable cause to arrest Mr. Maddox when they encountered him on September 29, 2007.  Moreover, the government argues that, despite there being no exigency justifying Mr. Maddox's warrantless arrest, the arrest was nevertheless legal.  Supplement to Opposition at 17-18 & n.7.  Under <u>United States v. Watson</u>, 423 U.S. 411 (1976), the police can, in some circumstances, make warrantless arrests even without a showing of any exigent circumstances.  Accordingly, the government claims that the search of Mr. Maddox's car can be justified as a search incident to a lawful arrest under <u>New York v. Belton</u>, 453 U.S. 454 (1981).

      The arguments the government makes in support of a finding that the search of Mr. Maddox's car was legal fail three reasons.  First, Detective Copeland's credibility is such that a finding of probable cause cannot be based solely on the claims he makes.  Second, even if the Court does find that Detective Copeland's claims are sufficiently credible so as to support a finding of probable cause for Mr. Maddox's arrest, the <u>Belton</u> rule still would not apply to the search of the Mr. Maddox' car because the search of the car did not occur contemporaneously with Mr. Maddox's arrest.  Third, even if the search of the car was sufficiently contemporaneous with the arrest for the purposes of the <u>Belton</u> rule, the search of the car would still be illegal because the police expressly waited for Mr. Maddox to arrive in his car before arresting him, thus improperly manufacturing circumstances to bring the <u>Belton</u> rule into play.

5

At the evidentiary hearing, Detective Copeland elaborated on the claims that he had originally made in the Affidavit regarding his earlier investigation into Mr. Maddox's activities. In order to for there to be a finding that that the police had probable cause to arrest Mr. Maddox when they encountered him on September 29, 2007, these claims that Detective Copeland originally made in the Affidavit must be believed. However, as extensively demonstrated in earlier filings, a great many of the claims that Detective Maddox made in the Affidavit are patently false. Memorandum at 9-11, 22-23. The government has given no reason why the word of someone who has been, at the very least, extremely careless with the truth even while making statements under oath should now be believed. Moreover, the government has not in any way corroborated the assertions that Detective Copeland made regarding his investigation into Mr. Maddox's activities. Accordingly, the government has not demonstrated that the police actually did have probable cause when they arrested Mr. Maddox. For this reason, the Court cannot find that the search of Mr. Maddox's car was a search incident to a lawful arrest.[2]

---

[2] In the Memorandum, counsel for Mr. Maddox argued that, based on Detective Copeland's assertions in the Affidavit and his testimony at the evidentiary hearing, it appeared that the police did have probable cause for arresting Mr. Maddox. Id. at 16. In making those arguments, however, counsel was not endorsing the veracity of Detective Copeland's statements. When counsel stated that Detective Copeland's statements appeared to make out probable cause for Mr. Maddox's arrest, counsel was arguing that the existence of probable cause actually rendered Mr. Maddox's arrest illegal because the police, once they would have obtained that probable cause, did not get a warrant for Mr. Maddox's arrest, even thought they had time to do so. Id. at 15-20. In making this argument, counsel was not relying on the fact that Detective Copeland's statements regarding probable cause for Mr. Maddox's arrest were true. Rather, he was relying on the fact that the government could not defend against the argument counsel was making by turning around and claiming that its own agent was lying. Thus, counsel was arguing that, to the extent that Detective Copeland's statements damaged the government's case, the government was stuck with those statements. Counsel was not arguing that those statements were credible in and of themselves. Indeed, throughout these proceedings, counsel has been arguing that Detective Copeland's statements cannot be believed.

Even if the Court were to find that Detective Copeland's statements regarding his investigation into Mr. Maddox's activities are sufficiently credible to base a finding of probable cause on, the Court must still find that the search of the car was illegal. Even if the arrest of Mr. Maddox is found to be legal, the search of the car still cannot be justified as a search incident to arrest. When the police arrested Mr. Maddox, they took him from his car to inside the residence at 5025 Sheriff Road, N.E., where Mr. Maddox was then made to wait while the police searched the residence. It was only at some undisclosed time after Mr. Maddox had been taken inside of 5025 Sheriff Road, N.E. that the drug-detection dog alerted on his car, and it was only after this alert that the car was searched. Accordingly, the search of the car was not conducted contemporaneously with Mr. Maddox's arrest so as to qualify as a search incident to that arrest under New York v. Belton, 453 U.S. 454 (9181). See United States v. Ramos-Oseguera, 120 F.3d 1028, 1036 (9th Cir. 1997) (Belton rule permitting search of car incident to occupant's arrest did not apply where car had been moved by police and defendants were already at police station); United States v. Vasey, 834 F.2d 782, 787 (9th Cir. 1987) (Belton rule did not apply where search of car occurred thirty to forty-five minutes after arrest).

Moreover, even if the search of the car had been conducted contemporaneously with Mr. Maddox's arrest, the Belton rule still would not apply because the police planned it so that Mr. Maddox would be with his car when he was seized. At most, Watson only permits the police to make warrantless arrests without a showing of exigent circumstances; it does not create a similar rule for searches. Warrantless searches therefore still require a showing of exigent circumstances. See Coolidge v. New

7

Hampshire, 403 U.S. 443, 455 (1971) (in the absence of a search warrant, "there must be 'a showing by those who seek exemption [from the warrant requirement]… that the exigencies of the situation made that course [foregoing the warrant] imperative.'") (quoting Katz v. United States, 389 U.S. 347, 357 (1967).  Here, there were no exigent circumstances to justify the search of Mr. Maddox's car.  Though the government is arguing that the search of the car can be justified as a search incident to Mr. Maddox's arrest, it must be recognized that that arrest was not a legitimate exigent circumstance.  Here, if the Court were to credit the statements of Detective Copeland and find that the police did have probable cause to arrest Mr. Maddox, then the Court must also recognize that the police could have arrested Mr. Maddox at any time prior to September 29, 2007. Nevertheless, the police expressly waited until September 29, 2007 to arrest Mr. Maddox.  Moreover, in doing so, they expressly planned to arrest him while he was with his car.  Indeed, the police even had a drug-detection dog with them for apparently no other reason than to examine Mr. Maddox's car.

Because there was no exigency for arresting Mr. Maddox on September 29, 2007, the government cannot now cite that arrest as an exigent circumstance permitting the search of the car under the Belton rule.  This seems especially true since the police, by waiting until September 29, 2007 to seize Mr. Maddox, expressly arranged things so that he would be with his car when they seized him.  Accordingly, the government cannot now claim that the search of the car was justified as a search incident to arrest.  See Coolidge v. New Hampshire, 403 U.S. 443, 469-70 (1971) (for "plain view" exigent circumstance to apply to seizure of evidence, police must "inadvertently" come across the

evidence); United States v. Jones, 239 F.2d 716,719 (5th Cir. 2001) ("the exigencies supporting a warrantless seizure may not… consist of the likely consequences of the government's own action"); United States v. Munoz-Guerra, 788 F.2d 295, 298 (5th Cir. 1986) (the "government [can]not justify a warrantless search on the basis of exigent circumstances of its own making").  It is one thing to permit the police to make warrantless arrests without a showing of exigent circumstances and quite another thing to permit them to then use that privilege to circumvent the warrant requirement by also conducting warrantless searches without a showing of exigent circumstances.

It is now expected that the government will argue that, even if the search of Mr. Maddox's car cannot be justified as a search incident to Mr. Maddox's arrest, it can still be justified because the police developed grounds to search the car independently of that arrest—i.e., because of Sergeant Neill's alleged observation of the empty Ziploc and because of the drug-detection dog's alert on the car.  To justify the seizure of the car that occurred before these grounds came into existence, the government will claim that, because of previous information they had received about the car,[3] the police had sufficient reasonable suspicion for holding it for examination by the drug-detection dog. However, in Terry, the Supreme Court made clear that, in order to be permissible under Terry, police conduct must be "strictly circumscribed by the exigencies which justify its initiation."  Terry v. Ohio, 392 U.S. 1, 25 (1968).  Here, no exigent circumstance can be

---

[3] Evidently this information is the information that Detective Copeland allegedly developed during his earlier investigation into Mr. Maddox's activities.  As already stated, however, Detective Copeland has proven himself to be someone who, at the very least, is extremely careless with the truth even when under oath.  Supra at 7.

9

shown for seizing Mr. Maddox's car because there was no reason that the police needed to seize the car at the specific time that they did seize it.

Before Mr. Maddox's car was seized on September 29, 2007, Detective Copeland had observed it parked outside of 5025 Sheriff Road, N.E. on at least three occasions. The police could have seized the car on any of those occasions. Moreover, the police obviously knew where they could find Mr. Maddox's car. Thus, there is no reason why they had to wait until the morning of September 29, 2007 to seize the car. While the police, under Watson, may be able to store up probable cause for an arrest to use at any time of their choosing later in the future, they cannot store up reasonable suspicion for a Terry stop for later use. Indeed, the Court in Terry stated that its holding that the police could, in certain circumstances, conduct searches and seizures without probable cause was meant to cover those situations where "necessarily swift action" is needed because of "on-the-spot observations" by a police officer. Terry, 392 U.S. at 20. Accordingly, the police cannot rely on any previously acquired reasonable suspicion they had towards Mr. Maddox's car to justify its seizure on September 29, 2007. Thus, the seizure was illegal, and all evidence recovered from the car must be viewed as fruits of that illegal seizure.

## **CONCLUSION**

WHEREFORE, the defendant, Edward Maddox, argues that, notwithstanding United States v. Watson, 423 U.S. 411 (1976), his arrest and the subsequent search of his car were illegal.

>Respectfully submitted,

>\_\_\_\_/s/_____
>Jerry Ray Smith
>Counsel for Edward Maddox
>717 D Street, N.W.
>Suite 400
>Washington, D.C. 20004
>(202) 347-6101