**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **UNITED STATES OF AMERICA,** : | |
| : | |
| v. : | Cr. No. 07-288 (PLF) |
| : | |
| **EDWARD MADDOX,** : | |
| **Defendant.** : | |

**GOVERNMENT'S SECOND SUPPLEMENTAL, POST-HEARING
BRIEF IN OPPOSITION TO DEFENDANT'S MOTION TO SUPPRESS
EVIDENCE, STATEMENTS AND OTHER INFORMATION**

The United States, by and through its attorney, the United States Attorney for the District of Columbia, respectfully submits this second supplemental brief in opposition to defendant Edward Maddox's motion to suppress evidence, statements, and other information. In support of this brief, the United States relies on the testimony provided at the March 26, 2008 hearing on the defendant's motion, the government previous briefs opposing defendant's motion, as well as the following points and authorities and such other points and authorities as may be cited at any other hearing regarding the defendant's motion.

    I.    The Search Of The Car Was Justifiable As A Search Pursuant To The Search-Incident-To-Arrest Exception To The Warrant Requirement

Apparently recognizing that the Supreme Court in <u>United States v. Watson</u>, 423 U.S. 411 1976), rejected the contention that the Fourth Amendment required a warrant to make a valid arrest for a felony offense, the defendant seems to abandon his argument that he could not have been arrested without a warrant. Defendant's May 7, 2008 Post-Hearing Brief at 7. Instead, in an attempt to show that the search-incident-arrest exception does not justify the search of his car, the defendant now contends that: 1) there was no probable cause to support his arrest, 2) the search of the car was too attenuated to his arrest to justify the application of the exception, and 3) even if the exception

did apply, the government would still need to show exigent circumstances to justify the search. Each of these claims is meritless and will be addressed, in turn, below.

        A.        Probable Cause Existed To Support The Arrest Of The Defendant

That probable cause existed to support the defendant's arrest cannot be credibly disputed by the defendant given his express recognition in his April 15, 2008 Post-Hearing Brief, at pages 16-20, that the police had probable cause to arrest him even prior to their arrival to the scene. See also Defendant's May 7, 2008 Post-Hearing Brief page 6 n. 2 (recognizing the defendant's prior statements on the existence of probable cause to support his arrest). Indeed, the defendant specifically states that "it seems that, even before Detective Copeland applied for the search warrant, the police had sufficient probable cause for getting a warrant for Mr. Maddox's arrest." Defendant's April 15, 2008 Post-Hearing Brief at 16.

The defendant also makes multiple additional representations, at page 16 of his April 15, 2008 Post-Hearing Brief, to support the existence of probable cause to arrest the defendant based on Detective Copeland's investigation: 1) "during the month before he applied for the search warrant, his reliable confidential informant was routinely telling him that he was actively witnessing Mr. Maddox selling drugs while armed 'pretty much every day,'" 2) "on at least three separate occasions during the month before he applied for the warrant, he had personally observed Mr. Maddox engaging in numerous hand-to-hand transactions with people on the street wherein Mr. Maddox would give a person a small object and receive money in return," and 3) "[o]n every occasion that the Detective observed Mr. Maddox, Mr. Maddox was conducting these hand-to-hand transactions in a known open-air drug market at a time that it associated with the sale of heroin." Id.

Moreover, based on the defendant's inaccurate reading of Supreme Court precedent, the defendant spends over three pages of his April 15, 2008 Post-Hearing Brief, at pages 17-20, arguing that the search of the car was improper because "the police here had ample time to get a warrant for Mr. Maddox['s]" arrest based on probable cause and the search of the car resulted from his allegedly illegal warrantless arrest.

Now, apparently recognizing that the existence of probable cause to support his arrest directly undercuts his hopes of invalidating the search of the car, the defendant attempts to argue that there was, in fact, no probable cause to support his arrest. To support this contention, the defendant makes the baseless assertion that Detective Copeland was "extremely careless with the truth even while making statements under oath" and should not be believed. This contention flies directly in the face of the defendant's unambiguous prior representations as well as the plain facts of this case.

As discussed at pages 2-4 of the Government's April 24, 2008 Post-Hearing Brief, Detective Copeland, who has been a law enforcement officer for 19 years and has been actively involved in narcotics and gun-related investigations as a detective currently assigned to the Narcotics Special Investigation Division, personally conducted an investigation of the defendant, which led him to believe that the defendant was engaged in the sale of narcotics, while armed with a gun, in the 600 block of Division Avenue, N.E. This investigation included, among other things, Detective Copeland's discussions with a reliable confidential informant who had direct personal knowledge of the defendant's sale of narcotics while armed with a gun, and Detective Copeland's personal surveillance of the 600 block of Division Avenue, N.E.

In addition, although the search warrant affidavit contained inaccuracies regarding certain activities of the defendant which were conveyed to Detective Copeland from other law enforcement

officers, Detective Copeland readily explained that these inaccuracies were inadvertent and he did not learn about them until his preparation for the evidentiary hearing in this case. See Government's April 24, 2008 Post-Hearing Brief at page 3 n. 3. Furthermore, these inaccuracies did not undermine the significant other evidence indicating the defendant's armed drug-dealing activities.

Accordingly, the officers had probable cause to arrest the defendant, prior to arriving on the scene, based on Detective Copeland's previous investigation of the defendant.

> B. The Search Of The Car Was Sufficiently Contemporaneous With the Arrest Of The Defendant

The search of the car was sufficiently contemporaneous to qualify under the search-incident-to-arrest exception. Here, there was no apparent break in time between the defendant's arrival, the officers' investigation of the car, the search of the car on the scene, and the defendant's ultimate arrest in his nearby residence.

Thus, because the defendant's arrest took place contemporaneously, or "on the heels of," the search, it was authorized by the search-incident-to-arrest exception, and "it is of no import that the search came before the actual arrest." United States v. Riley, 351 F.3d 1265, 1269 (D. C. Cir.2003) (citing Rawlings v. Kentucky, 448 U.S. 98, 110-11 n.6 (1980) (applying search-incident-to-arrest exception where "the formal arrest follow[s] quickly on the heels of the challenged search")). Accord United States v.(John) Thornton, 733 F.2d 121, 128 n.9 (D. C. Cir.1984) (upholding search of person for narcotics before arrest, noting that the police had probable cause even before search was conducted and adding: "[e]ven if a formal arrest is not made until after an initial search, the search can be justified as incident to an arrest that 'follow[s] quickly on the heels of the challenged search,' so long as probable cause to arrest existed before the search began") (quoting Rawlings, 448 U. S. at 111)).

C.  No Special Showing Of "Exigent Circumstances" Is Required To Apply The Search-Incident-To-Arrest Exception

Contrary to the defendant's contention in his May 7, 2008 Post-Hearing Brief at pages 7-9, the police were not required to identify specific exigent circumstances to justify the search of the defendant's car in order for the search-incident-to-arrest exception to apply.

First, there is simply no basis for the defendant's contention that the police should be precluded from relying on the search-incident-to-arrest exception because "the police, by waiting until September 29, 2007, to seize Mr. Maddox, expressly arranged things so that he would be with his car when they seized him." The defendant fails to cite to any evidentiary support for this contention, and none exists.

Second, even assuming that the defendant could somehow make such an evidentiary showing, Belton's "bright-line" rule directly undermines the defendant's contention that the government must demonstrate a specific exigent circumstance to justify the search of the car. In New York v. Belton, 453 U. S. 454 (1981), the Supreme Court held that the search-incident exception allows officers to search the entire passenger compartment of a vehicle incident to the arrest of an occupant of the car. The Court added that there was no need to justify the search by showing that the particular arrest involved evidence preservation or safety concerns, explaining that (1) once probable cause was established, the search required no additional constitutional justification, and (2) it was important to employ a "settled principle to a recurring factual situation" so that citizens would understand the scope of their constitutional protections and police officers would understand the scope of their authority. Id. at 460-61. Reasoning that "the arrest of a suspect who is next to a vehicle presents identical concerns regarding officer safety and the destruction of evidence as the arrest of one who is inside the vehicle," the Court subsequently construed Belton's

"bright-line" rule to permit the search of a vehicle incident to the arrest of a recent occupant. Thornton v. United States, 541 U.S. 615, 621 (2004).[1]

> II. The Limited Detention Of The Defendant's Car Prior To The Officers Conducting The Search Did Not Undermine The Search's Validity

Detective's Copeland prior investigation of the defendant provided reliable information that he actively utilized the car to store and transport contraband and, consequently, there was reasonable articulable suspicion, as well as probable cause, to believe that the car contained contraband – including illegal drugs and a gun – when the defendant exited the car on September 29, 2007. According, the officers limited detention of the car prior to their search was appropriate for investigatory purposes.

The Supreme Court has recognized that the limited detention of an individual's personal property is appropriate "on the basis of less than probable cause, for the purpose of pursuing a limited course of investigation," after applying a balancing test to evaluate reasonableness. United States v. Place, 462 U.S. 696, 703-04 (1983). Accordingly, in Place, the Court found that the principles of Terry and its progeny would permit the officer to detain [personal property] briefly to investigate the circumstances that aroused his suspicion, provided that the investigative detention is properly limited in scope." Id. at 706 (citing Terry v. Ohio, 392 U.S. 1 (1968).

Here, there was ample evidence to support the limited detention of the car based on Detective Copeland's prior investigation and the police officer's observations on the scene on September 29,

---

[1] Defendant's continued reliance on Coolidge v. New Hampshire, 403 U.S. 443 (1971), is misplaced. The present case clearly differs from Coolidge in the circumstances of the seizure. Because the car in Coolidge was parked on the defendant's driveway, the seizure of that automobile required an entry upon private property. Here, the car was seized from a public place where access was not restricted. See Caldwell v. Lewis, 417 U.S. 583, 593 (1974) (expressly recognizing the limited applicability of the Coolidge decision given the "scope of the search and the circumstances of the seizure" at issue in that case).

2007. Detective Copeland specifically testified that he had seen the defendant driving a burgundy Chevrolet with Maryland tags, and that car is registered to him, as well as another person. Tr. 56, 58-59, 77, 88, 96-97.[2] Detective Copeland also explained that he had information regarding the defendant transporting and selling drugs using the burgundy Chevrolet. Tr. 97-98. In addition, on September 29, 2007, Sgt. Gerald Neill looked in the window of the defendant's car and, in plain view near the center console, he saw a small, empty plastic bag, which was consistent with the type of bag used to package illegal narcotics. Tr. 31-32, 37-38, 40.[3] Moreover, Detective Sydnor subsequently conducted a protective sweep of the outside of the car with Cigi – a trained, reliable, narcotics-detecting police dog – and Cigi alerted to the presence of narcotics inside the car. Tr. 13, 30.

Furthermore, there is simply no basis for the defendant's apparent contention that the police 1) needed to stop and investigate the car as soon as they obtained reasonable articulable suspicion that it contained contraband or 2) needed to obtain a search warrant for the car as soon as they believed probable cause existed to search it. See Defendant's May 7, 2008 Post-Hearing Brief at 9-10.

The Supreme Court in Caldwell v. Lewis, 417 U.S. 583, 595 (1974), explained that, given the mobility of cars, exigent circumstances with regard to vehicles are not limited to situations where probable cause is unforeseeable and arises only at the time of arrest. As the Court explained:

---

[2] "Tr. ___" refers to the referenced page(s) of the transcript from the March 26, 2008 hearing.

[3] Sgt. Neill testified that he is a 29-year MPD veteran, who has been involved in "well over a thousand" narcotics-related arrests. Tr. 28.

> Assuming that probable cause previously existed, we know of no case or principle that suggests that the right to search on probable cause and the reasonableness of seizing a car under exigent circumstances are foreclosed if a warrant was not obtained at the first practical moment. . . . The exigency may arise at any time, and the fact that the police might have obtained a warrant earlier does not negate the possibility of a current situation necessitating prompt police action.

Id. at 596-97.

In Chambers v. Maroney, 399 U.S. 42 (1970), the Supreme Court specifically rejected the contention that a search warrant was required prior to detaining and searching a car on probable cause:

> For constitutional purposes, we see no difference between on the one hand seizing and holding a car before presenting the probable cause issue to a magistrate and on the other hand carrying out an immediate search without a warrant. Given probable cause to search, either course is reasonable under the Fourth Amendment. . . . In that event there is little to choose in terms of practical consequences between an immediate search without a warrant and the car's immobilization until a warrant is obtained.

Id. at 52.

Moreover, as discussed in the Government's April 24, 2008 Post-Hearing Brief at 16, the officers did not exceed the established bounds for reasonable suspicion detentions during the short period of time during which Sgt. Neill looked into the window and the protective sweep by the dog occurred. Here, Sgt. Neill arrived soon after the defendant arrived. In addition, the narcotics dog was on-call and near the 5000 block of Sheriff Road, N.E., at the time that the defendant arrived and was called to the scene after the defendant arrived. Tr. 11, 19. Sgt. Sydnor also testified that Cigi alerted to the presence of narcotics during the first time that he walked the dog around the car. Tr. 13, 30. Such a limited amount of time was appropriate for a reasonable suspicion detention so that the dog could be called to the scene and conduct a protective sweep of the car. See United States

v. Nurse, 916 F.2d 20, 24-25 (D.C. Cir. 1990) ("The detention lasted only twenty to thirty minutes, the amount of time necessary to conduct the canine sniff, and the sniff itself appears to have been conducted diligently, notwithstanding the first dog's failure to perform properly"); United States v. Tavolacci, 895 F.2d 1423, 1427 (D.C. 1990) (finding that police acted diligently in conducting a canine sniff, where approximately fifteen minutes elapsed before dog was procured, even though officers had advance notice of suspect's arrival).

## CONCLUSION

WHEREFORE, the government respectfully requests that the Court deny defendant's motion to suppress evidence, statements, and other information.

    Respectfully submitted,

    JEFFREY A. TAYLOR
    UNITED STATES ATTORNEY

    /s/
By:    OPHER SHWEIKI
    Assistant United States Attorney
    Bar No. 458776
    Federal Major Crimes Section
    555 4th Street, N.W.
    Washington, D.C. 20530
    (202) 353-8822
    Opher.Shweiki@usdoj.gov