UNITED STATES DISTRICT COURT FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | )( | |
| | )( | Criminal No. 07-288 |
| v. | )( | Judge Friedman |
| | )( | Trial: May 27, 2008 |
| EDWARD MADDOX | )( | |

**MOTION IN LIMINE TO PRECLUDE THE GOVERNMENT
FROM USING ALLEGED CONFESSION BY DEFENDANT
AS SANCTION FOR VIOLATION OF RULES OF DSICOVERY**

COMES NOW the defendant, Edward Maddox, by and through undersigned counsel, and respectfully moves in limine for the Court to preclude the government from using at trial a confession supposedly made by him to law enforcement personnel at the time of his arrest. This alleged confession was only made known to Mr. Maddox 2 days ago, and trial in this case is to start 4 days from now. In support of this motion, Mr. Maddox would show:

1.     On October 4, 2007, Detective Copeland testified at the detention hearing in this case. At the hearing, the Detective stated that, when the search of 5025 Sheriff Road, N.E. was being conducted and contraband was being found, the Detective went to arrest Earl Johnson, Mr. Maddox's nephew, because Mr. Johnson was found to have been present in the house when the police entered and was therefore presumably responsible for whatever was in the house. At this point, the police had already brought Mr. Maddox into the house as well. When Mr. Maddox saw his nephew getting arrested because of the all the contraband that was being found in the house, he allegedly "stood up and stated that the drugs were his." He then went on to explain that his nephew "had nothing

1

to do with what was going on in the house." The Detective did not indicate that Mr. Maddox made any statements beyond these. Detention Hearing Tr. at 23.

    2.    On October 23, 2007, Detective Copeland testified before a grand jury in connection with this case. When testifying before the grand jury, Detective Copeland stated that, when Mr. Maddox saw his nephew getting arrested because of the all the contraband that was being found in the house, he allegedly "yelled out 'No, this is all my stuff. He had nothing to do with it." The detective did not indicate that Mr. Maddox made any statement besides this one. Grand Jury Tr. at 15. This testimony regarding the statement that Mr. Maddox allegedly made was consistent with the testimony about the statement that the Detective had given earlier at the detention hearing.

    3.    On November 9, 2007, the government sent to undersigned counsel discovery packet for this case. This packet contained all the relevant police reports for this case. Affixed to the packet, was a discovery letter (Letter). In the Letter, the government made a disclosure regarding the statements that Mr. Maddox allegedly made to law-enforcement officers in connection with this case. In relevant part, the Letter states:

> The government provides notice of any statements made by your client in the attached discovery materials. If any further statements come to the government counsel's attention after further discussions with witnesses, you will be informed. The defendant spontaneously told the police officers on the scene that the items recovered from the house were his, and that none belonged to his nephew.

Letter at 5. The Letter does not reference any other statements by Mr. Maddox apart from this one. Though the language just quoted indicates that Mr. Maddox's alleged statement is contained in the attached discovery materials, this statement (nor any other statement by him for that fact) is not actually contained in any of the discovery materials.

The discovery materials do contain a rights card, which indicates that, when Mirandized, Mr. Maddox refused to make any statements to the police.

  4. On March 14, 2008, undersigned counsel filed a letter formally requesting discovery in this matter. In this letter, counsel asked that he be provided, among other things, all materials discoverable under Federal Rules of Criminal Procedure 12 and 16, which obviously would include statements by a defendant. The government never responded to this requests, and accordingly counsel concluded that the statement about which he had already been informed—that is, the statement that Mr. Maddox allegedly made confessing to the contraband in the house—was the only statement that Mr. Maddox is alleged to have made.

  5. On March 26, 2008, an evidentiary hearing was held on Mr. Maddox's motion to suppress evidence on Fourth Amendment grounds. At that hearing, Detective Copeland testified that, when the residents of the house (including Mr. Maddox's cousin) were being arrested, Mr. Maddox blurted out, "no, no, don't lock them up, it's all mines." Mr. Maddox then explained that his nephew uses the place on weekends to have sex with girls. Motions Hearing Tr. at 105. Again, the Detective did not indicate that Mr. Maddox made any statements beyond these. This was of course consistent with the other statements about the alleged confession that Detective Copeland had already made and with the disclosure regarding statements by the defendant that the government had given to undersigned counsel.

  6. <u>Voir dire</u> in this case was held on May 20, 2008, at the conclusion of the proceedings, counsel for the government, Opher Shweiki, informed undersigned counsel that a police officer with the last name of Pierce is now claiming that, when Mr. Maddox

3

made the statements about the drugs in the house being his, he also went on to state that the drugs and the gun in the car were his as well. Mr. Shweiki then indicated that, if Mr. Maddox takes the stand and denies having any knowledge of the gun and drugs in the car, Mr. Shweiki will call Officer Pierce to impeach Mr. Maddox with this newly revealed confession that he supposedly made about the gun and the drugs in the car at the time of his arrest.

7. When Mr. Shweiki informed undersigned counsel about Officer Pierce having supposedly heard Mr. Maddox confess to the gun and drugs in the car, counsel pointed out that this was the first he had ever heard of such confession and that there is no evidence whatsoever to corroborate that any such confession was ever made. Indeed, the testimony of Officer Pierce is even contradictory to the testimony of Detective Copeland, who repeatedly testified that Mr. Maddox only confessed to the contraband in the house, and also to the disclosure that the government made to undersigned counsel about Mr. Maddox's alleged statements, which similarly indicated that Mr. Maddox only confessed to the contraband in the house. It seemed suspicious to counsel that a police officer was only now coming forward on the eve of trial with the unsupported claim that—almost 8 months earlier—he heard Mr. Maddox confess to the guns and the drugs in the car. Mr. Shweiki indicated that he would consult with Officer Pierce again and makes sure that the information he was giving counsel was correct. On May 21, 2008, Mr. Shweiki and undersigned counsel met at Mr. Shweiki's office, and Mr. Shweiki indicated that he had spoken directly with Officer Pierce and that Officer Pierce was in fact claiming that he heard Mr. Maddox's confess that the gun and the drugs in the car were his.

4

8. This very late disclosure of the supposed confession by Mr. Maddox regarding the gun and the drugs in the car prejudices Mr. Maddox in two significant ways. First, and most importantly, the late disclosure makes it difficult for Mr. Maddox to develop evidence to show that Officer Pierce is either lying or misremembering when he claims that he heard Mr. Maddox confess to the gun and the drugs in the car being his. Second, the fact that the evidence was not disclosed earlier means that Mr. Maddox was denied a fair opportunity to evaluate the plea offers that had earlier been extended in this case.

9. The fact that this alleged statement in which Mr. Maddox supposedly confesses to the gun and the drugs in the car is only just now coming to light tends to undercut the fact that it was ever even made in the first place. If the statement really had been made, it seems it would have been documented in some police report, in some police officer's notes, or in some records or notes in the prosecution's office. Accordingly, if counsel had been informed of the confession earlier, he could have subpoenaed records to show that the statement was in fact never documented. However, on such short notice, counsel cannot do the type of record search that would be needed to establish this before trial.[1] Additionally, Mr. Maddox's cousin, Earl Johnson, was present when the Mr. Maddox supposedly confessed to the gun and the drugs in the car. Through his initial investigation into this case, undersigned counsel developed good reason for believing that Mr. Johnson did not hear Mr. Maddox make any statement like the one that Officer Pierce claims Mr. Maddox made. Unfortunately, at this time, Mr. Johnson is at the Federal Correctional Institution in Talladega, Alabama. In undersigned

---

[1] Of course, if the government is willing to stipulate that Officer Pierce is only just now claiming for the first time that Mr. Maddox confessed to the gun and the drugs in the car, the need to develop such evidence would not be necessary.

counsel's experience, it takes 30 to 60 days to bring a federal prisoner into this jurisdiction on a Writ of Habeas Corpus ad Testificandum. As trial is to start 4 days from now and will probably conclude 6 days from now, it is not now possible for counsel to writ Mr. Johnson in and interview him, so as to present him as a witness for trial. Accordingly, the late notice of Mr. Maddox's supposed confession precludes counsel from developing evidence to undercut the existence of the statement.

      10.     The second reason that Mr. Maddox is prejudiced by the late disclosure of the alleged confession is that it kept him from making an informed evaluation of earlier plea offers. Since the time that it became apparent that the evidence recovered from 5025 Sheriff Road, N.E. was likely to get suppressed, Mr. Maddox has been anxious to go to trial so that he can take the stand and tell his side of the story in regards to the gun and drugs allegedly found in the car. Obviously, Mr. Maddox would testify that he had no knowledge of the gun and the drugs in the car. This desire to testify to exonerate himself played a key role in Mr. Maddox's decision not to take a plea in this case. However, it now appears that Mr. Maddox's opportunity to testify in his own defense was not as viable a possibility as he had—quite reasonably—come to believe. The problem is not only that Officer Pierce now claims that he heard Mr. Maddox confess that the gun and the drugs in the car were his, but also that, as thing stand now, Mr. Maddox cannot present evidence to impeach that claim without also presenting evidence that he confessed to the contraband found inside of 5025 Sheriff Road, N.E. Mr. Maddox could impeach Officer Pierce's claim with testimony from Detective Copeland, who whenever asked about any statements that Mr. Maddox may have made, always testified that Mr. Maddox only confessed to the contraband in the house and never once claimed that Mr.

6

Maddox said anything about the gun and the drugs in the car. However, such testimony from Detective Copeland would obviously harm Mr. Maddox as much (if not more) than it would help him, as it would directly connect him to the much larger amount of drugs found in the house. Thus, even though Officer Pierce's claims appear to be at odds with the testimony of another police officer, Mr. Maddox has no real workable way to defend himself against the claims of Officer Pierce.[2] If Mr. Maddox had been timely informed that Officer Pierce was claiming that he confessed to the gun and the drugs in the house, it is quite possible that might have worked out a plea earlier.

      11.    Federal Rule of Criminal Procedure 16 says that, "if a party fails to comply with this rule, the court may… prohibit the party from introducing the undisclosed evidence." Fed R. Crim. P. 16(d)(2)(C). Under the circumstances presented here, it is submitted that precluding the government from using the testimony of Officer Pierce that Mr. Maddox confessed to the gun and the drugs in the car is the imminently fair thing to do.

---

[2] There is something that seems very unfair about the government being able to put on testimony by one police officer that contradicts the testimony of another police officer, knowing that, because of the specific circumstances of the case, the defendant cannot call that other officer to counter the first officer's claims.

7

**CONCLUSION**

  WHEREFORE, the defendant, Edward Maddox, moves this Honorable Court to preclude the government from using the testimony of Officer Pierce that he heard Mr. Maddox confess to the gun and the drugs in the car.

               Respectfully submitted,

               _____/s/_____
               Jerry Ray Smith
               Counsel for Edward Maddox
               717 D Street, N.W.
               Suite 400
               Washington, D.C. 20004
               Phone: (202) 347-6101

UNITED STATES DISTRICT COURT FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA )( | |
| )( | **Criminal No. 07-288** |
| v.       )( | **Judge Friedman** |
| )( | **Trial: May 27, 2008** |
| EDWARD MADDOX       )( | |

:

# ORDER

The Court having considered Mr. Maddox's Motion in Limine to Preclude the Government from Using Alleged Confession by Defendant as Sanction for Violation of Rules of Discovery, the opposition to this motion by the government, and any argument from the parties, it is, this _____ day of _____, 2008, hereby

**ORDERED** that the motion is granted, and it is further

**ORDERED** that the government is precluded from using at trial the confession that Mr. Maddox supposedly made regarding the gun and the drugs in the car.

**SO ORDERED**.

_____
Paul L. Friedman
United States District Judge